IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,828

STATE OF KANSAS,
*Appellee*,

v.

JOAQUIN ALFONSO DEANDA,
*Appellant.*

SYLLABUS BY THE COURT

1.

Under K.S.A. 2016 Supp. 22-3210(d)(1), a district court has discretion to grant a presentence motion to withdraw a guilty or no contest plea for good cause. Appellate courts review a district court's decision on such motion for an abuse of discretion, including the underlying conclusion that defendant did not establish good cause. Applying the abuse of discretion standard does not involve reweighing evidence or assessing witness credibility.

2.

Factors a district court should consider in determining whether a defendant establishes good cause to withdraw a plea include, but are not limited to, whether (a) the defendant was represented by competent counsel; (b) the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (c) the plea was fairly and understandingly made.

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed February 23, 2018. Affirmed.

1

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, was on the brief for appellant.

*Linda J. Lobmeyer*, special prosecutor, *Susan H. Richmeier*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  Joaquin Alfonso DeAnda appeals from the district court's denial of his presentence motion to withdraw his guilty plea to first-degree premeditated murder. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Garden City police discovered a 16-year-old girl's body in a trash dumpster behind the house where 17-year-old DeAnda lived with his mother. The State charged DeAnda with first-degree murder, rape, and aggravated criminal sodomy. Before trial, DeAnda agreed to plead guilty to first-degree premeditated murder in exchange for the State dismissing the remaining charges. The district court accepted the guilty plea, made a finding that aggravating circumstances existed, and sentenced DeAnda to life in prison without the possibility of parole for 50 years. See K.S.A. 21-4635.

On appeal, this court vacated the hard 50 sentence and remanded for resentencing as required by *Alleyne v. United States*, 570 U.S. 99, 103, 117-18, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (jury must make aggravating factual determination required for hard 50 sentence). *State v. DeAnda*, 299 Kan. 594, 324 P.3d 1115 (2014); see also *State v. Soto*, 299 Kan. 102, Syl. ¶ 9, 322 P.3d 334 (2014) (applying *Alleyne* to K.S.A. 21-4635 statutory procedure).

2

On remand, DeAnda moved to withdraw his guilty plea. The district court conducted an evidentiary hearing during which the parties offered joint exhibits, including mental health evaluations concerning DeAnda's competency. DeAnda and Melanie Freeman-Johnson, defense counsel at the time of the original plea, both testified. The court denied the motion, stating:

> "In utilizing the case of *State v. Edgar* [281 Kan. 30, 36, 127 P.3d 986 (2006)] in evaluating today's case, Court finds as follows: Trial counsel in this matter at the time that the plea was entered is one of the better criminal trial attorneys that the Court has encountered. She has exercised due diligence in representing the defendant in all stages and actively solicited services and opportunities on behalf of the defendant. . . .

> "The second aspect of the *Edgar* case dealing with being misled, coerced, mistreated, or unfairly taken advantage of, the Court would find that this does not apply to Mr. DeAnda's situation. We have had two previous arraignments, one of which Mr. DeAnda entered not guilty pleas and a jury trial was set. There is at least twice the arraignment checklist that this court has used to identify the rights of any given defendant or used and reviewed with Mr. DeAnda in open record. There were written plea agreements and waiver of right utilized to identify what the agreement was and what rights Mr. DeAnda was going to be surrendering. There was in addition a plea advisory of rights. Mr. DeAnda had over the period of the two . . . and a half years had three opportunities to go to Larned State Hospital to have various additional medical and psychological experts utilized both to assist him in adjusting his medications and to ensuring that he was understanding the nature of what was going on, and the medicines were adequately balanced and properly monitored for purposes of being taken by Mr. DeAnda.

> "Question on the third part of the *Edgar* evaluation is whether or not the plea was fairly and understandably made. Court notes that there were at the time the plea was entered three charges against Mr. DeAnda. One involved a life sentence. This is one that was ultimately entered on in terms of a plea. Sentence would involve a life sentence. There were two options that apply. Certainly at that time one was a 25-year minimum

3

sentence. The other was for aggravating factors being applied, that the sentence could be requiring a 50-year minimum sentence. There were two additional counts that were dismissed as part of the plea agreement. Both were charged as level 1 on the nondrug . . . grid. Each of them had at least the possibility of an additional period of time of jail of 165 months. That is the aggravated number in a box showing the 'I' category. That means that if he were to be convicted of all three original charges, he could be facing or was running the risk of facing an additional 13.75 years for each of those two counts, or a little over an additional 27 years either above and beyond the 25-year minimum sentence for life or the 50-year sentence as might be applicable.

"Court notes that mental health issues have been a continuing problem for Mr. DeAnda for probably coming on ten years now. . . . [H]e was dealing with some issues that were requiring the attention of his family and medical staff. The real issue is not necessarily whether or not he was having mental health issues, because clearly he was. The issue is whether he was capable of understanding the concept of performing acts that would allow him to decide whether he was acting right or wrong in terms of any moral . . . certainty.

"At the time the plea was entered, the Court finds that Mr. DeAnda was in fact capable of making an informed decision and did in fact intelligently act in that capacity . . . .

". . . Mr. DeAnda had received extensive assistance, both in mental health care and in understanding the nature of these proceedings . . . the motion for request setting aside the plea entered by Mr. DeAnda is hereby denied . . . ."

DeAnda timely filed a notice of appeal. Jurisdiction is proper. K.S.A. 2016 Supp. 22-3601(b)(4) ("[A]ny case in which the crime was committed on or after July 1, 1993, and the defendant has been convicted of an off-grid crime."); K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 2016 Supp. 22-3601).

STANDARD OF REVIEW

DeAnda argues for de novo review, claiming it is appropriate because his due process rights are at stake. He cites *State v. Wills*, 244 Kan. 62, 65-68, 765 P.2d 1114 (1988), for support, but that case deals with the State's alleged breach of a plea agreement. That is not what happened in DeAnda's case.

When considering plea withdrawals, a district court has discretion under K.S.A. 2016 Supp. 22-3210(d)(1): "A plea of guilty or nolo contendere, for good cause shown *and within the discretion of the court*, may be withdrawn at any time before sentence is adjudged." (Emphasis added.) Therefore, an appellate court reviews a district court's decision to deny a plea withdrawal motion and the underlying determination that the defendant has not met the burden to show good cause for abuse of discretion. *State v. Reu-El*, 306 Kan. 460, Syl. ¶ 1, 394 P.3d 884 (2017). That standard of review is well known:

> "Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

DeAnda bears the burden of establishing the district court's abuse of discretion. See *State v. Denmark-Wagner*, 292 Kan. 870, 875, 258 P.3d 960 (2011). When employing an abuse of discretion standard, an appellate court does not reweigh evidence or assess witness credibility. *Reu-El*, 306 Kan. 460, Syl. ¶ 1.

THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION

A trial court may, for good cause and at its discretion, allow a defendant to withdraw a guilty or nolo contendere plea at any time before sentencing. K.S.A. 2016 Supp. 22-3210(d)(1). In addressing whether a defendant has shown good cause, a district court typically considers three factors: (1) whether "the defendant was represented by competent counsel"; (2) whether "the defendant was misled, coerced, mistreated, or unfairly taken advantage of"; and (3) whether "the plea was fairly and understandingly made." *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors "'need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause.'" *State v. Macias-Medina*, 293 Kan. 833, 837, 268 P.3d 1201 (2012); see also *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

DeAnda argues all three *Edgar* factors support his claim of good cause to withdraw his plea. He alleges: (1) Freeman-Johnson, trial counsel, provided inadequate advocacy on his behalf; (2) "[t]he plea process and the competency evaluation conspired to take advantage of [his] fragile state of mind"; and (3) the guilty plea was not freely, voluntarily, and understandably made. We consider each claim.

1. *Representation by competent counsel*

DeAnda argues,

> "Despite counsel's knowledge of the fact that defendant's mental health was in constant fluctuations and that there was an apparent fluctuation between competency and incompetency over short periods of time, counsel relied upon a snap shot of the defendant's apparent competency some time before the plea to assume that the defendant was competent and understanding of the nature of the plea at the time of the plea. . . . As

6

a result counsel allowed young, immature and mentally ill defendant to enter a plea which carried a life sentence."

In addition, DeAnda claims Freeman-Johnson's "lackluster advocacy at the crucial point of the plea provides good cause for [him] to withdraw [h]is plea." But as quoted above, the district court found DeAnda was represented by competent counsel.

"Although the *Edgar* factors permit counsel's competence or lack thereof to be one consideration . . . they should not be mechanically applied to demand that a defendant demonstrate ineffective assistance arising to the level of a violation of the Sixth Amendment" to demonstrate good cause under K.S.A. 2016 Supp. 22-3210(d). *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010). "Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor." 290 Kan. at 513.

The record does not support DeAnda's claim that inadequate counsel supplies good cause to withdraw his plea. To the contrary, it demonstrates competent representation when DeAnda entered the plea agreement. For example, at plea hearing, Freeman-Johnson noted,

> "'[T]he plea advisory of rights . . . reviews all of the constitutional rights to a trial, appellate rights, subpoena issues, burden of proof, and all other rights under both constitutions that Mr. DeAnda has, and that I reviewed those with Mr. DeAnda on three separate occasions. We've gone over it extensively, and he has demonstrated a very good understanding of it. He was able to provide me the same information back, and so that I will state for the record I am confident that he is fully aware of all of the rights that he is giving up and chooses to enter the plea at this time.'"

At the plea withdrawal hearing, DeAnda acknowledged Freeman-Johnson "pretty often" visited him when he was in jail and expressed satisfaction with her representation

7

during the plea agreement process. As to their meeting to discuss whether to take the plea, Freeman-Johnson testified,

> "There—I mean, that—that's a pretty long discussion had quite a few times. Which is always to weigh whether or not a plea versus going to trial is the best option, and we talked quite a bit about that. And, yes, the—what would happened at trial played a significant part in discussing or weighing the options of choosing a plea.
>
> . . . .
>
> "It's ultimately his decision which one to choose. I gave him my advice on that and . . . counseled him on helping—making sure he understood what those two options entailed so he could decide."

She also said she was aware of DeAnda's mental health issues such as "an ongoing schizophrenic break," "bizarre thinking," and "odd delusions or thought processes that didn't make any sense." And due to "strange encounters," she "hired experts to look at him." For two and a half years, there was "a constant process of mental health evaluations." Moreover, Freeman-Johnson testified she recognized DeAnda was young, immature, inexperienced, and had "pretty severe mental illness," so she took more time to discuss pleas with him compared to many other clients.

On this record, both DeAnda and Freeman-Johnson's testimony support the district court's conclusion that he received competent advice. There is no conflicting evidence on this issue. The district court did not abuse its discretion in its assessment of the first *Edgar* factor.

## 2. *DeAnda's understanding of the plea*

DeAnda "does not maintain that counsel, the court, or any other party or institution intentionally mistreated, coerced, or took advantage of [him]." Instead, he claims "the perfect storm of circumstances exerted pressure on [him] in unfair ways . . . , intersected with [his] fragile state of mind[,] and had the effect of coercing and pressuring [him] into taking the plea." To support this, DeAnda highlights six different evaluations made prior to the plea hearing from May 2008 to October 2010 that sometimes he was found competent to stand trial and sometimes not. The district court found DeAnda was not misled, coerced, mistreated, or unfairly taken advantage of.

The plea hearing transcript shows the district court dealt with DeAnda's mental health issues with great caution. For instance, the court asked several questions regarding DeAnda's medication and ability to understand the plea process.

"THE COURT: . . . Have you changed your medicines in any way in the last, oh, six months or a year?

"THE DEFENDANT:  I think maybe in the last year, yeah. Well, I don't know if they changed it rather than just increased it.

"THE COURT:  Okay. You are still under Abilify; is that one of the medicines you are still taking?

"THE DEFENDANT:  Yes.

"THE COURT:  Okay. And that seems, according to the doctors, to have helped you considerably?

"THE DEFENDANT:  Right.

9

"THE COURT:  Okay. Anything new or different that you—you've been taking?

"THE DEFENDANT:  Well, they did—I kind of did remember they did change—I was taking Celexa, and then they changed it to, like, a generic. I'm not sure what it's called. . . .

. . . .

"THE DEFENDANT:  Yeah. It was Prozac.

. . . .

"THE COURT:  Okay. Is there anything in discussing this matter with Ms. Freeman-Johnson that you did not understand?

"THE DEFENDANT:  For the most part I think . . . I understood what was going on.

"THE COURT:  Okay. Is there anything that we've talked about that you need clarification on? Is there something I can do better in terms of explaining it to you?

"THE DEFENDANT:  I think . . . you're doing fine.

. . . .

"THE COURT: . . . [I]s this what you would like to do? Do you want to go through with a change of plea as it relates to the first count, with an understanding that there would be a dismissal of [the remaining charges]; is that what you would like to do?

"THE DEFENDANT:  Yes."

At the plea withdrawal hearing, DeAnda testified that "during the whole time period before taking the plea," he was "nervous" about "the overall outcome." He also felt "[a]nxious," "shame," "guilt," and "scared about the trial." The following exchange shows his motivation to take the guilty plea.

"Q. Okay. How did . . . your feelings of anxiety . . . or fear of the trial play into you taking a plea?

"A. . . . [W]e came to the plea agreement that we had come up with, and that seemed . . . pretty fair to me.

"Q. Okay. Did you in any way start thinking more about the plea in order to avoid the trial?

"A. Yeah. Yes."

Defense counsel testified DeAnda "did not want a trial, didn't want to go through that or have his family or anyone else go through that."

Once again, the record supports the district court's ruling that DeAnda was not misled, coerced, mistreated, or unfairly taken advantage of. There is no evidence showing he was forced to take a guilty plea because of an unfair justice system or his fragile state of mind. The district court did not abuse its discretion in its assessment of the second *Edgar* factor.

3.  *A guilty plea made freely, voluntarily, and understandingly*

DeAnda claims because of the "cognitive, emotional, and developmental problems from which [he] suffered," "it cannot be said with any degree of certainty that [he] entered the plea understandingly." But this argument is not supported by the record.

11

During the plea hearing, DeAnda was informed of the nature of the charges and of his constitutional rights that were waived upon his plea of guilty. He was also informed about the maximum penalty, a life sentence in his case. The plea hearing transcript affirmatively shows DeAnda entered his plea understandingly and voluntarily. The judge was able to observe DeAnda when he stated he understood the nature of the charge against him, the constitutional rights that he was going to give up with the guilty plea, and the consequences of his plea. See *State v. Schaefer*, 305 Kan. 581, 595, 385 P.3d 918 (2016) ("The district court had the opportunity to view Schaefer's affect and body language and assess whether he was truthfully and unequivocally answering those questions."). And at the plea withdrawal hearing, the same judge heard DeAnda's testimony regarding the 2010 guilty plea.

The district court did not abuse its discretion in its assessment of the third *Edgar* factor. See, e.g., *Reu-El*, 306 Kan. at 475-76; *State v. Morris*, 289 Kan. 1091, 1105, 319 P.3d 539 (2014).

Accordingly, we hold the record reflecting the entire plea process, including the written plea agreement, counsel's advice, and the plea colloquy, supports the district court's exercise of discretion guided by the *Edgar* factors. The district court did not abuse its discretion in denying DeAnda's presentence motion to withdraw his guilty plea.

Affirmed.

12