NOT DESIGNATED FOR PUBLICATION

Nos. 120,811
120,812
120,813

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAMIEN D. CAMPBELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed March 27, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr*., district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM: In these consolidated cases, Damien C. Campbell appeals the district court's denial of his presentence motion to withdraw his plea. Campbell argues that he showed good cause to withdraw his plea because his counsel was incompetent in failing to move to dismiss under the Kansas Agreement on Detainers Act, K.S.A. 22-4401 et seq. Because the district court reasonably found Campbell's counsel was competent, we affirm.

1

*Factual and Procedural Background*

By late 2015, both the State and federal government were prosecuting Campbell for various crimes. John Duma represented Campbell in the state and federal cases.

The State charged Campbell:

- In September 2014 (case 14 CR 935) with possession of cocaine with intent to distribute, possession of marijuana, and battery of a law enforcement officer;
- In April 2015 (case 15 CR 393) with aggravated burglary, burglary, felony theft, and criminal damage to property; and
- In April 2015 (case 15 CR 398) with battery of a law enforcement officer.

Campbell was also convicted in a 2013 case (13 CR 712) and had been granted probation. In 2015, the State moved to revoke Campbell's probation and impose his original sentence of 22 months in 13 CR 712. All these cases remained unresolved into late 2017.

Campbell resolved his federal case by plea agreement and began serving a 117-month sentence in February 2016.

In November 2017, Campbell moved pro se in state court to dismiss for lack of prosecution. Alternatively, he asked to plea in absentia with his sentences to run concurrent to his federal case. The district court denied this motion.

In December 2017, Campbell, again acting pro se, moved for a speedy trial and requested a final disposition of his cases, again asking for concurrent sentences. The district court denied these requests because Campbell had failed to comply with the Kansas Agreement on Detainers Act, K.S.A. 2019 Supp. 22-4401 et seq—he had failed to

provide the proper information to begin a transfer and start the 180-day speedy trial clock.

In January 2018, Campbell filed another pro se writ requesting final disposition. Its only substantial differences from his previous requests were its citation to K.S.A. 22-4401 et seq. and its delivery to the prison's warden. It appears from the record that the district court did not rule on this writ.

Sometime after January 2018, Duma discovered that although Campbell had an outstanding warrant on the state cases, no detainer was on file in Campbell's federal prison. Duma contacted the sheriff's department to resolve the issue, and a detainer was filed. In June 2018, the district court received an "IAD–Notice of Untried Indictments" from Campbell's prison. Campbell was returned to Kansas and appeared before the court in late July 2018.

In August 2018, the State and Campbell reached a plea agreement. Campbell pleaded guilty to possession of cocaine with intent to distribute in 14 CR 935, aggravated burglary in 15CR393, and battery of a law enforcement officer in 15 CR 398. The State dismissed the remaining charges, dismissed Campbell's probation revocation case, and recommended that all sentences run concurrent to Campbell's federal sentence.

At the plea hearing, Duma addressed the court:

"Honestly, this plea is in such his best interest that I mean it's saving him tons of time.

. . . .

". . . [W]e just had a conversation again about speedy trial and the writ, et cetera and I've re-explained it and I've advised him again that even if there was a speedy trial issue as to the three cases and he wins all three of those, which he can't because of the

3

way the law's set up, then he still would owe the State of Kansas the 22 months on the revocation and it would have to be consecutive.

. . . .

"So if he can—if he was right and his attorney was wrong about the law on that issue, he would win that issue and still cost himself 22 additional months once he's done with the federal time. And I think he understands that and he wants to proceed forward."

Campbell confirmed he understood this and wanted to plea. The district court then engaged in a plea colloquy. Campbell affirmed he was satisfied with Duma except for the speedy trial issue. When asked if Duma had answered all his questions when going over the plea agreement, Campbell replied, "Yeah, somewhat." After Campbell confirmed that he had no other questions for Duma or the district court, the district court accepted his plea.

Yet before he was sentenced, Campbell moved to withdraw his plea. He argued that Duma was not competent counsel because he had not moved to dismiss the charges. In response, the State argued that Duma's plea strategy showed Duma was competent counsel—the plea saved Campbell time in a Kansas prison and the speedy trial issue would not have succeeded.

At the hearing on Campbell's motion, Campbell and Duma testified. Campbell testified that Duma visited him the day before the plea. Campbell wished to address his writs, hoping to dismiss the cases. Although Campbell knew the court had denied his November and December filings, he thought his cases should be dismissed because the district court had never ruled on his January writ and 180 days had passed. Campbell asserted that Duma wanted to talk only about the plea and had not answered all Campbell's questions about the writ. Campbell said that Duma advised against bringing up the writ, as it would anger the judge, and said he would withdraw from the case if they did. Although Campbell felt rushed and basically did not want to plea, Campbell admitted that Duma had answered all of his questions about the plea. He admitted he

4

understood the plea and agreed it was a good deal. At the time of the plea, Campbell believed the plea was the best thing for him as he wanted to get back to federal custody. But after he pleaded, he began thinking he did the wrong thing.

Duma testified he told Campbell many times that the detainer actions and speedy trial arguments would not work. He sent Campbell letters explaining legally why his theory was wrong. Duma told Campbell to "[w]ait until the detainer gets to the prison, file your request for detainer and then come back and we'll accomplish what we're trying to accomplish." Yet Campbell insisted that his own interpretation of the law was correct.

As to the plea agreement, Duma testified he explained to Campbell why the plea was in his best interest. Duma also told Campbell that bringing up the meritless speedy trial issue would only hurt him. The State had told Duma that if he moved to dismiss the cases, the State would withdraw the plea agreement. Thus, even if Campbell won the motion to dismiss, Campbell would have to serve prison time in Kansas for the probation revocation. After relating this information to Campbell, Duma believed that Campbell wanted to take the plea.

The district court denied Campbell's motion to withdraw his plea, finding Duma competently represented Campbell:

"Counsel J. Duma is an experienced and well-respected defense attorney. In this case he represented this Defendant at the federal and local level. During his testimony at the plea withdrawal motion counsel indicated that he spent a considerable amount of time resolving the criminal actions at the federal and state level. A plea to an underlying 117-month sentence was entered in federal court and that plea also included the state level dispositions which Campbell took advantage of. It cannot be denied that the plea resolutions at the state level were advantageous to this Defendant. . . .

5

"The testimony of counsel reveals that he did discuss the ramifications of the application of the Detainer Act request with the Defendant. J. Duma indicated that an argument about the demand and possible speedy trial violations, if unsuccessful, would have resulted in a very unfavorable result—as described above. Counsel even described the conversation that he had with the attorney for the State wherein he was advised that if this argument was made that the plea offer would be withdrawn. Importantly, even if the three unresolved cases had been dismissed, Campbell still faced the 22-month consecutive sentence in the 2013 probation violation case. The Defendant himself admitted that this discussion had been held but that he now maintains he wanted Duma to argue this precise point. This is contrary to the advice given to Campbell and the advantageous plea agreements that counsel and Campbell reached with the State and the federal court. It also flies in the face of the fact that the Defendant concedes the pleas would result in a good resolution.

". . . This Court finds that J. Duma's performance was above the standard of reasonableness considering the facts of these cases. In fact, it is more likely that it would be unreasonable to argue the failed merits of Campbell's speedy trial claims and subject him to additional prison sentences—or to successfully argue the merits of the claims in the 2014 and 2015 cases and subject the Defendant to 22 months of additional time in prison from the 2013 case."

Citing the *Edgar* factors, the district court found that Campbell failed to show good cause to withdraw his plea. The district court also denied a motion to dismiss that Campbell's new counsel had filed. Part of that ruling found that Campbell's pro se writs were insufficient to begin a detainer action.

At sentencing, the district court followed the plea agreement. For possession of cocaine with intent to distribute, the district court sentenced Campbell to 73 months in prison followed by 36 months of postrelease supervision. The other shorter sentences would run concurrent to that one, and all state sentences would run concurrent to the federal sentence.

Campbell timely appeals.

*Did the District Court Err in Denying Campbell's Presentence Motion to Withdraw His Plea?*

Campbell argues the district court erred by denying his motion to withdraw his plea. Campbell contends he showed good cause to withdraw his plea because Duma's advocacy was lackluster. He believes Duma should have moved to dismiss his charges rather than push him into a plea.

*Standard of Review*

An appellate court reviews the denial of a presentence motion to withdraw a plea and the underlying determination that the defendant has not met its burden to show good cause under the abuse of discretion standard. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party seeking to withdraw the plea—here, Campbell—bears the burden of establishing the district court's abuse of discretion. And, under that standard, this court defers to the district court's fact finding, declining to reweigh evidence or assess witness credibility. See *Woodring*, 309 Kan. at 380.

*Analysis*

A defendant may withdraw a plea for good cause and within the discretion of the district court at any time before sentencing. K.S.A. 2019 Supp. 22-3210(d)(1). In determining whether the defendant has shown good cause, the district court typically considers the following three factors—commonly known as the *Edgar* factors:

(1) whether competent counsel represented the defendant;

(2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and

(3) whether the plea was fairly and understandably made.

See *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018) (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). These factors do not form an exclusive list, thus the district court may consider other factors when considering the existence of good cause. 307 Kan. at 503.

If the district court finds that the defendant failed to show good cause, it must deny the defendant's request to withdraw his plea. *State v. Brown*, 46 Kan. App. 2d 556, 562, 263 P.3d 217 (2011). To overturn the district court, Campbell "must establish that no reasonable person would have agreed with the district court's assessment of the three *Edgar* factors and its ultimate conclusion that [Campbell] failed to establish good cause to withdraw his plea." *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017).

Campbell focuses on the first *Edgar* factor—whether the defendant was represented by competent counsel. Campbell argues Duma was lackluster because he "failed to make any effort to get Campbell's charges dismissed and instead pushed Campbell into a plea he did not want."

In a presentencing motion to withdraw a plea, the defendant need not show a violation of the Sixth Amendment right to counsel to show good cause. Instead, lackluster advocacy may be enough to support a good cause finding that defendant was not represented by competent counsel. *DeAnda*, 307 Kan. at 504; see also *State v. Scott*, No. 118,979, 2019 WL 2559515, at *5-6 (Kan. App. 2019) (unpublished opinion) (explaining that the court uses this lower standard for good cause showings), *rev. denied* February 27, 2020. Although our Supreme Court has not defined lackluster, Webster's

8

New World College Dictionary 812 (5th ed. 2014) defines it as "lacking energy or vitality; boring, unimaginative, etc." 2019 WL 2559515, at *7.

The record shows that the district court reasonably found that Campbell was not lackluster. First, Duma secured for Campbell a favorable plea agreement that took into account both his federal and state cases and allowed Campbell to serve concurrent sentences on multiple felony cases. Duma also negotiated the dismissal of Campbell's probation revocation, which likely would have led to an additional 22 months in prison. So Duma's efforts allowed Campbell never to step foot in a Kansas prison. And that was Campbell's original goal, as shown by his writs and testimony at the plea withdrawal hearing—before he had buyer's remorse.

Second, Campbell's pro se efforts to dispose of the cases had failed. Yet Duma discovered a detainer had never been filed and helped resolve this issue.

Third, as to the motions to dismiss, on multiple occasions Duma explained to Campbell that this strategy would fail. Duma's opinion did not rest on his own supposition, but on his expertise in the law and on the district court's previous orders. Duma also explained that the motion would harm Campbell because the State would withdraw the plea deal, likely precluding Campbell's chance of serving concurrent sentences. At the plea withdrawal hearing, even Campbell acknowledged that if the dismissals failed and the State withdrew its plea offer, he would have been "screwed." And Duma explained that if the dismissals succeeded, Campbell would likely serve 22 additional months. Campbell understood all this and—although disappointed—decided to take Duma's advice to plea.

Campbell also tries to show he would have won the motion to dismiss, indicating Duma's predictions of failure were in error. But this argument is a nonstarter. The specific question on review is whether the district court abused its discretion by finding

9

Campbell failed to show Duma was incompetent. The question on review is not whether the district court erred by failing to dismiss Campbell's cases or whether Campbell's January writ was adequate to start the 180-day clock. The potential success on either of these issues does not reflect on Duma's advocacy—unless, perhaps, the law indisputably favored Campbell, which has not been shown. What matters is whether Campbell was lackluster when considering whether the motion to dismiss was a viable option.

The record shows that a reasonable person could easily find that Duma's acts were not lackluster but that Duma competently counseled Campbell, guiding him to a beneficial outcome. Campbell failed to show good cause to withdraw his plea. Thus, Campbell fails to meet his burden to show the district court abused its discretion.

Affirmed.