NOT DESIGNATED FOR PUBLICATION

No. 121,694

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PATRICK WAYNE COLSTON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Cherokee District Court; OLIVER KENT LYNCH, judge. Opinion filed December 11, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN and STANDRIDGE, JJ.

PER CURIAM: Patrick Wayne Colston appeals the district court's denial of his motion to withdraw his plea. Colston also appeals the district court's refusal to appoint new counsel. Because the district court did not abuse its discretion in either decision, we affirm.

In April 2017, Colston pleaded no contest to aggravated indecent liberties with a child, in violation of K.S.A. 2014 Supp. 21-5506(b)(1), and to electronic solicitation of a child, in violation of K.S.A. 2014 Supp. 21-5509(b)(1), for the crimes he committed in

1

November 2014. Colston's plea agreement with the State called for a prison sentence of 107 months for aggravated indecent liberties followed by a consecutive 61 months for electronic solicitation, with lifetime postrelease supervision. The district court accepted the plea and set a date for sentencing.

Before sentencing, Colston moved to withdraw his plea. The same day, Timothy Grillot also moved to withdraw as Colston's attorney. The district court granted Grillot's motion to withdraw. Later, the district court appointed Robert Myers to represent Colston on his motion to withdraw plea. In the motion, Colston asserted that he did not understand the plea when he agreed to it.

But before a hearing on the motion to withdraw plea, Colston also moved for another attorney, asserting that Myers had a conflict of interest. Colston explained that Myers had prosecuted him in Columbus city court and had ruled against him as a judge in Ottawa County. In October 2018, the district court held a hearing on this motion to appoint new counsel. Colston testified that he thought Myers should have been doing more on his case but could not articulate with any specificity what more Myers could have done. Colston also could not identify any information about either of the following: (1) cases in which Myers had prosecuted him or (2) cases where Myers had adjudicated a case against him. Colston did acknowledge that the City of Picher, where Myers was a municipal judge, had not existed as a city for 10 years. Colston said that Myers had prosecuted a traffic case against him in Columbus as recently as 2016 but gave no further specifics. Colston could not explain how these previous cases created a conflict of interest.

The court noted that Colston had failed to provide any particular evidence or details about these prior cases other than Colston's own statements alleging their existence. Myers asked the court to take the matter under advisement and allow him a day or two to track down the records of municipal proceedings. Myers explained that he had

difficulty finding information on the Columbus city case, telling the court the following: "Because I think—I'm not sure that I was there in 2016, Judge." Myers wanted a chance to find documents which would support Colston's claim and give them to the court. But the district court denied the motion from the bench, rather than allow time to search for documents. The court kept Myers as counsel for Colston.

At the hearing on Colston's motion to withdraw his plea, Colston testified that he did not have the opportunity to review all discovery before entering his plea, that Grillot did not do anything in his case, and that he did not understand the plea agreement. He testified that he could not review the evidence in jail because he did not have any privacy. Colston feared that he would "get beat half to death" if other defendants held in the jail became aware that Colston was the defendant in a child sex case. Colston testified that he signed the plea agreement to get out of jail and because of pressure from Grillot.

Grillot testified that Colston had all the discovery, except for videos which he did not send to Colston because Colston had no way to watch them while incarcerated. Grillot testified that Colston never raised the issue of not being able to review his discovery. Grillot also testified that he was developing a defense but did not go further with the defense once Colston decided to accept a plea offer. Grillot testified that he read the State's plea offer to Colston and discussed it with him. Grillot believed that Colston had enough time to consider the plea. Also, Grillot believed that Colston entered his plea voluntarily, without coercion, and with an understanding of the consequences of his plea.

The district court ruled that Colston had not established good cause to withdraw his plea. It found that Colston was represented by competent counsel and that the plea was fairly and understandingly made. The court was not persuaded by Colston's claim that he had no opportunity to review the discovery in his case while in jail. The court noted that Colston was released on bail after his plea but did not state that he reviewed the material while he was out on bond. The court stated that Colston could have

3

potentially pointed to something in discovery that he did not know about before his plea but discovered while on bond. In short, Colston could show that he lacked some specific knowledge before his plea that caused him to be misled or enter a plea without understanding. Colston did not make such a claim. Finally, the court found that Colston did not show that the plea was unfair or that he lacked understanding. The court denied Colston's motion to withdraw his plea. In May 2019, the court sentenced Colston, following the recommendations made in the plea agreement.

Colston timely appeals.

*Did the District Court Err in Denying Colston's Motion to Withdraw His Plea?*

Colston argues three reasons which forced him to accept a plea agreement. First, he asserts that he did not have full access to the evidence. Second, he claims that his attorney did not provide effective assistance. Finally, Colston contends that he did not understand the consequences of his plea.

The State argues that the record shows that Colston reviewed the evidence against him, particularly in private meetings with his attorney. The State contends that Colston's complaints about his attorney are vague and unsupported. Finally, the State asserts that the record shows Colston entering his plea voluntarily, with an understanding of the consequences of his plea and of the charges against him.

Although K.S.A. 2019 Supp. 22-3602(a) broadly prohibits an appeal "from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere," it does not preclude an appeal from the district court's denial of a motion to withdraw a plea under K.S.A. 2019 Supp. 22-3210(d). See *State v. Solomon*, 257 Kan. 212, 218-19, 891 P.2d 407 (1995). But see *State v. Thorpe*, 36 Kan. App. 2d 475, 477, 141 P.3d 521 (2006) (holding that a "defendant may not file a direct appeal from a guilty plea unless

4

the defendant first files a motion to withdraw the plea and the district court denies the motion").

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2019 Supp. 22-3210(d)(1). On appeal, the defendant must establish that the district court abused its discretion in denying a presentence motion to withdraw plea. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018); *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). K.S.A. 2019 Supp. 22-3210(a) embodies due process requirements and adds statutory conditions precedent to the acceptance of a plea. See *State v. Edgar*, 281 Kan. 30, 37, 127 P.3d 986 (2006).

Three factors (often referred to as the *Edgar* factors, see 281 Kan. at 36) generally guide a district court's consideration of whether a defendant has shown good cause required by K.S.A. 2019 Supp. 22-3210(d)(1) to withdraw a plea before sentencing: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. These factors are not to be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "viable benchmarks" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

In showing good cause to withdraw a no-contest plea, the defendant is not required to show his counsel was unconstitutionally ineffective; rather, the defendant may rely on "[m]erely lackluster advocacy" to support good cause under the first *Edgar* factor. *Schaefer*, 305 Kan. at 589.

A review of the record does not support Colston's first claim:  that he could not review the evidence against him. Colston testified that Grillot reviewed discovery with Colston during private attorney visits at the jail. Grillot also testified that he reviewed the discovery with Colston. As the district court noted, Colston could also have supported his claim by pointing to evidence in discovery that he learned about after his plea. Colston claims his ability to review the discovery before his plea was limited, but he makes no claim that he could not review the discovery while he was on bond and preparing for his hearing on the motion to withdraw plea. Yet, Colston points to no evidence to show that he was misled or that he entered his plea without knowledge. Colston does not cite any material which, if he had known about, would have changed his mind about entering a plea. Thus, the district court did not abuse its discretion in ruling that Colston had failed to show that he was misled or that his plea was not understandingly made.

Colston also claimed that his attorney provided only lackluster advocacy. Colston testified that he had eight alibi witnesses. On appeal, Colston states that he "did not believe his attorney did anything with this information." Grillot testified that he pursued an alibi defense for Colston, but he ultimately did not do anything with the information because Colston decided to accept a plea offer instead. The district court determined the following:  "There is no showing whatsoever that [Grillot] lacked competency in his representation." The record supports the idea that Grillot failed to develop a defense only because his client decided to accept a plea offer, not because Grillot's performance was lackluster. So the district court did not abuse its discretion in ruling that competent counsel represented Colston.

On appeal, Colston challenges whether his plea was understandingly made in one conclusory sentence:  He simply asserts that he did not understand the consequences of his plea. He fails, however, to specify what aspect of the plea agreement was unclear: whether he misunderstood the charges to which he was pleading guilty, misunderstood the penalty that would be imposed, or misunderstood something else. Whatever questions

6

Colston may have had, he simply explains that he never asked questions because he felt pressured by his attorney to accept the plea offer.

Here again, Colston never specifies how his attorney pressured him or why he felt he must accept the plea agreement. At the plea hearing, Colston stated that he understood the charges against him and the potential penalties for those charges. Later, at the hearing on his motion to withdraw his plea, Colston again stated that he knew the charges against him and their potential penalties when he pleaded no contest. And thus, Colston has failed to meet his burden to show good cause to withdraw his plea. So the district court did not abuse its discretion in ruling that Colston's plea was voluntarily and understandingly made.

*Did the District Court Err by Not Appointing New Counsel?*

On appeal, Colston argues that he had a justifiable dissatisfaction with his attorney for two reasons. After Grillot withdrew from the case, the court appointed Myers to represent Colston. Colston maintains (1) that Myers did not do anything on his motion to withdraw his plea and (2) that Myers had a conflict of interest.

The State argues that Colston met only his burden to show that Myers was a municipal judge but did not show that Myers was a judge in any case involving Colston. Further, Myers was a municipal judge in Picher and Picher ceased to exist as a municipality 10 years earlier. So any traffic case that Myers adjudicated would have been more than 10 years old. Also, the State argued that Colston showed only that Myers had been a prosecutor, but not that Myers had prosecuted Colston. The State concludes that no conflict of interest arises from a part-time prosecutor representing a defendant in cases other than those which it is his duty to prosecute.

A defendant who files a motion for new counsel must show justifiable dissatisfaction with existing counsel. Justifiable dissatisfaction can be shown by a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and the defendant. *State v. Pfannenstiel*, 302 Kan. 747, 759-60, 357 P.3d 877 (2015). Appellate courts review whether a conflict of interest required the district court to substitute counsel for abuse of discretion. *State v. Sweat*, 30 Kan. App. 2d 756, 765, 48 P.3d 8 (2002). An abuse of discretion can occur if judicial action is (1) arbitrary, fanciful, or unreasonable, that is, no reasonable person would take the view adopted by the district court; (2) based on an error of law, that is, the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, that is, substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *Pfannenstiel*, 302 Kan. at 760.

Colston fails to support his first complaint:  that Myers was not doing anything to further his motion to withdraw his plea. Colston testified that he met with Myers twice and discussed the motion to withdraw plea in person and in letters. Colston did not articulate any actions Myers should have taken but Myers failed to take. On appeal, Colston cites no support for whether a district court can or should replace counsel because counsel fell short of some unarticulated standard in the client's mind. Thus, Colston's argument that Myers was not doing anything is unsupported.

Colston's second complaint is similarly unsupported. Colston could provide no specifics about the traffic cases in which Myers had been a judge or prosecutor. The district court noted that, even if Myers had ruled against Colston as a judge in a traffic case, it would not create a conflict of interest here. The district court ruled that Myers serving as a neutral adjudicator in a traffic case which was at least 10 years old or more would have no bearing on Myers' ability to represent Colston now.

Colston concludes his argument by contending that the attorney-client relationship clearly deteriorated because Myers argued against Colston at the hearing on the motion to appoint new counsel. Colston asserts that Myers could not provide effective representation because of this irreconcilable conflict and complete breakdown in communication. See *Pfannenstiel*, 302 Kan. at 759-60.

Similarly, in *Pfannenstiel*, Ryan C. Pfannenstiel moved the district court to appoint new counsel. The court held a hearing on Pfannenstiel's motion, allowing Pfannenstiel to explain and support his dissatisfaction with his counsel. The court also directed questions to Pfannenstiel's counsel. On appeal, Pfannenstiel argued that a conflict of interest arose because his counsel essentially advocated against him, just as Colston argues here. Our Supreme Court rejected Pfannenstiel's argument and affirmed the district court. 302 Kan. at 768.

As in *Pfannenstiel*, the record here does not show Myers advocating against his client. Pfannenstiel's attorney admitted to not following Pfannenstiel's instructions on witnesses but explained that those witnesses would be unhelpful or undermine Pfannenstiel's testimony. Pfannenstiel's attorney also told the court that Pfannenstiel had misunderstood some things that they had discussed together. In context, this statement of misunderstanding supported Pfannenstiel's view that there had been a breakdown in communication between them. Thus, Pfannenstiel's attorney did not take an adversarial position against his own client. 302 Kan. at 767-68. In comparison, Myers did not advocate against his client either.

Here, Myers asked the district court not to rule on Colston's motion for new counsel from the bench. Myers requested that the court take the matter under advisement and wait a day or two so that counsel could find records of Colston's municipal hearings. Myers explained the importance of the records as follows:

"Judge, I'm a little cautious in this because he's raised issues that are of concerns to him and I think his concerns should be addressed or alleviated. I'm not sure the fact that he's unhappy with the position he's in and the advice that he's getting is a conflict. But those other two issues may rise to the level and so I'd rather the court have those [records] before it made a ruling that there is not a conflict and I would be allowed to proceed so we'll have those documents."

Myers took seriously Colston's claim that Myers had prosecuted Colston in Columbus city court and ruled against Colston as a Picher municipal judge. Myers understood the importance of finding documentation to verify Colston's claim, asking the court to allow time to procure records to bolster Colston's arguments. The district court did not abuse its discretion in determining that Myers was a serious advocate for his client and that no conflict of interest required appointing new counsel.

For the preceding reasons, we affirm the district court.

Affirmed.