NOT DESIGNATED FOR PUBLICATION

No. 122,501

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DORL C. GWYN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed June 18, 2021. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood,* assistant district attorney, and *Marc Bennett*, district attorney, and *Derek Schmidt¸* attorney general, for appellee.


Before MALONE, P.J., ATCHESON, J., and BURGESS, S.J.


PER CURIAM: Before being sentenced, Defendant Dorl Gwyn filed a motion with the Sedgwick County District Court to withdraw his guilty plea to unintentional second-degree murder in the death of his infant son. The district court appointed a new lawyer to represent Gwyn, held an evidentiary hearing on his motion, and denied the request. Gwyn has appealed that ruling. We find no abuse of discretion and, therefore, affirm the district court's decision.

1

In April 2018, Gwyn's eight-month-old son was unresponsive and appeared to be in physical distress. Gwyn and the infant's mother took the child to a Wichita hospital where he died. Given the circumstances of the child's demise, authorities suspected parental abuse. When a detective questioned Gwyn, he admitted "roughhousing" and "shadow boxing" with the infant—activities that, as he described them, included striking the child in the chest with some force. Gwyn's conduct was consistent with the mechanism of the child's death as shown in an autopsy. The autopsy also revealed signs the child likely had been physically abused multiple times.

About a month later, the State charged Gwyn with first-degree felony murder in the child's death, an off-grid violation of K.S.A. 2017 Supp. 21-5402(a)(2) carrying a mandatory sentence of life in prison. Gwyn went through several court-appointed lawyers; he also drafted and filed several motions with the district court on his own. Eventually, the district court appointed Quentin Pittman to represent Gwyn. Leading up to a trial date, the State indicated a willingness to amend the charge to unintentional second-degree murder, a severity level 2 person felony violation of K.S.A. 2017 Supp. 21-5403(a)(2), if Gwyn would plead guilty. Given Gwyn's anticipated criminal history, a conviction for unintentional second-degree murder would carry a presumptive guidelines prison sentence of between 442 and 493 months with a mid-range term of 467 months.

In July 2019, Pittman informed the State that Gwyn would be willing to plead to the amended charge but wanted an accommodation on the recommended sentence. The State's plea offer included a recommendation for the high guidelines sentence. At Gwyn's request, Pittman countered for the low guidelines sentence. Ultimately, they agreed to a joint recommendation for the mid-range sentence that everyone anticipated would be 467 months. On July 19, Gwyn signed an acknowledgment of rights and entry of plea form

typically used in Sedgwick County along with a written plea agreement. The district court held a plea hearing later the same day. The hearing was unremarkable, as those proceedings go.

At the plea hearing, Gwyn informed the district court he was taking a drug commonly prescribed for mental illnesses including schizophrenia and bipolar disorder. He told the district court he was in command of his faculties and understood the purpose of the hearing. In response to a series of yes-or-no questions from the district court, Gwyn agreed that he had read, understood, and signed the plea paperwork. Gwyn said he was satisfied with Pittman's advice and representation and more particularly had adequate time to discuss the plea with him. Gwyn voiced no complaints about Pittman or the plea process. Largely repeating information in the plea documents, the district court advised Gwyn of the rights he would be giving up by entering a guilty plea and outlined the range of punishment he might receive on the amended charge of unintentional second-degree murder. The district court accepted Gwyn's plea to that charge, adjudged him guilty, and continued the case for sentencing.

Before the sentencing hearing, Gwyn filed his own motion to withdraw the plea. He asserted Pittman had not adequately informed him of the ramifications of the plea and was ill prepared to try the case, so his decision to plead was less than voluntary and well-informed. The motion does not cite any grounds related to Gwyn's mental health or his prescription medication. The district court appointed a new lawyer to represent Gwyn and set the motion for hearing.

At the hearing in December 2019, Gwyn and Pittman were the principal witnesses. Gwyn testified that Pittman didn't communicate with him about the case generally or the proposed plea bargain. Gwyn told the district court he perceived that Pittman was unprepared to go to trial. Gwyn also testified that his medication tends to make him drowsy and sometimes clouds his thinking.

Pittman testified he met with Gwyn and discussed options with him including going to trial or entering a plea. He said he went over the proposed plea to unintentional second-degree murder in detail with Gwyn. Pittman testified that he had worked up the case for trial by filing necessary motions, consulting with an expert about possible defenses we infer related to the medication Gwyn was taking, and having an investigator meet with Gwyn and undertake other tasks. According to Pittman, Gwyn ultimately decided to accept the plea offer but wanted a better sentencing recommendation, prompting the discussion and revision of the deal shortly before the plea hearing. Pittman testified that he was aware of Gwyn's mental health issues and made a point of carefully and deliberately explaining matters to Gwyn.

At the motion hearing, the State introduced an audio recording of a telephone call Gwyn placed from the jail to his sister the evening before the plea hearing. In the call, Gwyn generally outlines the plea bargain and fairly accurately describes the prison term he would serve if he received all of the permitted good time reductions. Gwyn, who was then about 28 years old, told his sister he would be in his early 60s when he got out of prison and would have some life left to live. Although Gwyn expressed concerns to his sister about Pittman's readiness for trial, he considered the plea to have distinct advantages for him.

In a bench ruling, the district court acknowledged the legal standards governing motions to withdraw pleas commonly known as the *Edgar* factors. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The district court focused on Pittman's competence and the work he did on Gwyn's behalf both in preparing for trial and in navigating an advantageous disposition of the case with a plea to a reduced charge. The district court also found the plea hearing sufficiently informed Gwyn of the legal and factual implications of his plea and Gwyn understood the proceeding.

For those reasons, the district court denied Gwyn's motion to withdraw his plea. The district court then sentenced Gwyn to serve 467 months in prison followed by postrelease supervision for 36 months in conformity with the joint recommendation in the plea agreement. Gwyn has appealed.

LEGAL ANALYSIS

For his sole issue on appeal, Gwyn challenges the district court's denial of his motion to withdraw his plea. A defendant has the right to withdraw a plea before sentencing for "good cause" and in the district court's "discretion." K.S.A. 2019 Supp. 22-3210(d)(1). District courts should look at three primary factors to determine if a defendant has shown good cause to withdraw a plea:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018); *State v. Garcia*, 295 Kan. 53, 62-63, 283 P.3d 165 (2012) (noting that these considerations—the *Edgar* factors—establish a sound benchmark); *Edgar*, 281 Kan. at 36. All three factors need not favor the defendant to permit relief from a plea, and the district court should consider other relevant circumstances based on the facts of the particular case. See *DeAnda*, 307 Kan. at 503; *Garcia*, 295 Kan. at 63.

Because the governing statute expressly affords the district court discretion in ruling on a defendant's motion to withdraw a plea before sentencing, an appellate court reviews the determination for abuse of discretion. *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 (2009). A district court abuses its discretion if the result reached is "arbitrary, fanciful, or unreasonable." *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009). That is, no reasonable judicial officer would have come to the same conclusion if presented with the same record evidence. An abuse of discretion may also occur if the district court fails to consider or to properly apply controlling legal standards.

5

*State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009). A district court errs in that way when its decision "'goes outside the framework of or fails to properly consider statutory limitations or legal standards.'" 288 Kan. at 299 (quoting *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 [2007]). Finally, a district court may abuse its discretion if a factual predicate necessary for the challenged judicial decision lacks substantial support in the record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011) (outlining all three bases for an abuse of discretion). Gwyn bears the burden of demonstrating an abuse of discretion. See *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

On appellate review, we are bound by the district court's credibility determinations and may not reweigh the evidence presented during the hearing on Gwyn's motion. See *State v. Anderson*, 291 Kan. 849, Syl. ¶ 3, 249 P.3d 425 (2011) (noting deference to credibility findings and prohibition on weighing of conflicting evidence and applying rule to determination of motion to withdraw plea). In its bench ruling, the district court relied on Pittman's testimony and, thus, implicitly found Pittman to be more credible than Gwyn. See *State v. McMillan*, No. 115,229, 2021 WL 642297, at *6 (Kan. App. 2021) (unpublished opinion); *State v. Horn*, No. 118,930, 2019 WL 3047354, at *2 (Kan. App. 2019) (unpublished opinion) (district court's factual findings in memorandum decision "track[ing]" testimony from particular witness "necessarily reflect an implicit credibility determination" favoring that witness); *State v. Cheatham*, No. 106,413, 2012 WL 4678522, at *2 (Kan. App. 2012) (unpublished opinion). We must respect that obvious, though implicit, credibility finding.

With those principles in mind, we turn to the district court's ruling denying Gwyn's motion to withdraw his plea. The district court identified and applied the governing legal framework and, consistent with its credibility determination, understood the factual circumstances. Here, as in many cases, the *Edgar* factors tend to overlap.

The district court found Pittman competently represented Gwyn in an emotionally difficult case. To show incompetence, Gwyn had to establish Pittman provided "lackluster advocacy," a less demanding standard than inadequate representation violating the right to counsel protected in the Sixth Amendment to the United States Constitution. See *State v. Schaefer*, 305 Kan. 581, 589, 385 P.3d 918 (2016). The record supports the district court's conclusion of sufficient legal representation. Pittman readied the case for trial by exploring possible defenses and filing various motions, among other tasks. Simultaneously, he finalized an advantageous plea agreement with the State for Gwyn's consideration and approval.

The prospects for Gwyn's conviction on the first-degree felony-murder charge seemed strong, especially given his admission to engaging in deliberate conduct consistent with the cause of his infant son's death. Although the agreement to plead to an amended charge of unintentional second-degree murder included a lengthy recommended sentence, that was, in part, the product of Gwyn's criminal history. Moreover, the sentence of 467 months (or about 39 years without crediting any good time and about 33 years with a full good time adjustment) was marked more favorable than the punishment for felony murder. Had Gwyn been convicted at trial on the felony-murder charge, he would have received a mandatory life sentence. With his criminal history, Gwyn could not have been *considered* for parole until he had served roughly 49 years in prison. See K.S.A. 2020 Supp. 21-6620(b)(2). And there was no guarantee he would have been granted parole then or ever.

As Gwyn's telephone call with his sister illustrated, he considered a fixed sentence with a release date well within his life expectancy to be something of real value. Accordingly, Pittman competently represented Gwyn in achieving that objective.

The district court effectively credited the representations Gwyn made during the plea hearing over his contrary testimony at the hearing on the motion to withdraw his

7

plea. The district court found Gwyn understood the plea proceeding, and the transcript of the plea hearing supports that conclusion. Gwyn, of course, expressly represented he understood what was going on and had no mental or physical conditions that would impair his comprehension of the proceedings. The transcript shows Gwyn gave appropriate answers to the district court's questions during the plea hearing and said nothing that would suggest disordered thinking or impaired cognition. Nobody voiced any concern at the time that Gwyn might be less than fully engaged mentally.

Those circumstances sufficiently support the district court's conclusion on the remaining *Edgar* factors: Gwyn fairly and understandingly entered his guilty plea and was not misled, coerced, or otherwise taken advantage of in doing so. As we have said, Gwyn received what he viewed as a valuable sentencing consideration by entering into the plea agreement. Based on the district court's findings, Pittman adequately explained the implications of the agreement to Gwyn. The material terms of the arrangement and its effect on Gwyn's legal rights were also outlined in the written acknowledgment of plea and the plea agreement. The district court substantially repeated that information during the plea hearing. In short, Gwyn made a voluntary and informed decision to plead guilty.

Having examined the record on appeal, we conclude the district court acted within its broad judicial discretion—without legal error or factual misunderstanding—in denying Gwyn's motion to withdraw his plea. We are confident other district courts would have so ruled.

Affirmed.