NOT DESIGNATED FOR PUBLICATION

No. 122,102

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYANT E. DOUGLAS JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed February 5, 2021. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Kristen L. Stinnett*, legal intern, *Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: The State originally charged Bryant E. Douglas Jr. with one count each of attempted murder in the first degree, aggravated battery, and criminal possession of a weapon by a convicted felon. Before trial began, Douglas entered into a plea agreement and pled guilty to one count of aggravated battery and two counts of violating a protection order. Before sentencing, Douglas filed a pro se motion to withdraw his plea. At the conclusion of the hearing on the motion to withdraw, the district court rejected Douglas' arguments and found that he failed to demonstrate good cause under K.S.A. 2019 Supp. 22-3210(d)(1). Douglas appeals, arguing the district court abused its

1

discretion when it concluded he failed to demonstrate good cause. Specifically, he argues he demonstrated good cause under the second and third *Edgar* factors, but his arguments are belied by the record on appeal. See *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006). Accordingly, we find the district court's conclusions to be supported by the record and thus affirm the district court's judgment.

FACTS

In November 2018, Douglas and his girlfriend got into an argument that resulted in Douglas shooting her in the back of the head. The gunshot fractured the victim's skull, but she ultimately survived. Shortly thereafter, the State charged Douglas with one count each of attempted murder in the first degree, aggravated battery, and criminal possession of a weapon by a convicted felon. At Douglas' first appearance, the district court also entered a protective order that prohibited Douglas from contacting the victim.

On November 30, the State filed a motion to suspend phone, mail, and electronic mail privileges because Douglas violated the protective order and contacted the victim more than 20 times between November 21 and 28. The district court granted the State's motion in early December. In January, the district court held a preliminary hearing, and attorney Quentin Pittman represented Douglas. At some point after the preliminary hearing but before trial, the State offered Douglas a plea, but Douglas rejected the State's offer. At the arraignment in February, Douglas pled not guilty and requested a jury trial. Thereafter, the district court set the case for trial.

On June 10, 2019, proceedings commenced and the State and defense counsel completed voir dire. Before the jury was sworn in the following day, Douglas' mother told Pittman that Douglas wanted to enter a plea instead of proceeding with trial. After confirming Douglas' changed intentions with him, Pittman told the State that Douglas would plead if the State offered a severity level 5 person felony for the aggravated battery

2

charge, which the State agreed to do. After the parties agreed to the parameters of the plea agreement, the district court gave Douglas and Pittman time to discuss it. The two discussed the plea agreement in the courtroom, outside the presence of the jury, and Pittman did not recall Douglas asking any questions about it.

The district court then held a plea hearing. During the hearing, the district court asked Douglas if he had read the plea agreement and had time to discuss it with his attorney. Douglas responded affirmatively to both questions. Douglas also told the district court he did not have any questions about the documents. Moreover, Douglas assured the district court the signatures on the documents were his and that nobody was coercing him into signing the documents. The district court then explained to Douglas the rights he was giving up by entering the plea, and Douglas told the district court that he understood those rights and wished to proceed.

In exchange for entering the plea, the State recommended a severity level 5 person felony for the aggravated battery charge and two misdemeanor counts of violation of a protection order. The State also recommended the high number in the grid box, 136 months, for the aggravated battery charge and 12 months in jail for the two misdemeanors, with the sentences for the misdemeanors to run concurrent with the aggravated battery sentence. On sentencing, Douglas agreed he would not ask for a departure from the presumptive prison sentence. The State then asked the district court to dismiss the remaining charges. Next, the district court asked Douglas if he agreed with the State's sentencing recommendations based on his understanding of the plea, and Douglas said he did.

The district court then inquired into whether Douglas had consumed anything that impaired his ability to understand his rights or make decisions, and Douglas told the district court he had not. Douglas also assured the district court he had no mental or physical deficiencies that affected his decision-making. Thereafter, Douglas pled guilty to

3

aggravated battery and two counts of violation of a protection from abuse order. The district court accepted Douglas' pleas, dismissed the remaining charges, and set the case for sentencing.

In July, Douglas filed a pro se, presentencing motion to withdraw his plea. In the motion, Douglas alleged he was under duress when he signed his plea agreement, his counsel was ineffective, and the State intimidated his girlfriend with possible charges to get her to testify against Douglas. In response to the motion, the district court appointed new counsel, Steven Mank, to represent Douglas and held a hearing in October 2019.

At the hearing on Douglas' motion to withdraw his plea, Pittman testified that prior to June 10, he gave Douglas all the discovery from the case, hired an investigator who met with Douglas, and prepared for trial. Pittman's preparation for trial consisted of assembling all necessary information and meeting with Douglas to discuss the defense and how Douglas wished to proceed. By the time the jury trial was scheduled to begin, Pittman believed he was prepared to proceed.

Pittman did not believe Douglas wished to negotiate a plea agreement prior to June 11 since he had previously rejected the State's plea offer. It was only after Douglas' mother approached him the day trial was set to begin that Pittman learned of Douglas' interest in a plea. Before he accepted the State's revised plea offer, Douglas and Pittman discussed the terms of the plea, and Pittman did not recall Douglas asking any questions. Pittman did not believe he exerted any undue pressure on Douglas to accept the plea and reiterated that, prior to his discussion with Douglas' mother on June 11, he did not expect Douglas to plead guilty. He also testified that he and Douglas discussed the sentencing range for severity level 5 aggravated battery and how the plea agreement called for Douglas to get the high number on the grid box, which was 136 months.

4

Pittman testified he first learned Douglas was unhappy with the plea agreement when he got Douglas' pro se motion in the mail. He said the two briefly discussed Douglas' motion, and Douglas indicated he wanted to withdraw the plea. On cross-examination, Pittman maintained that he did not believe Douglas wished to plea prior to talking with Douglas' mother, he approached the State about a plea only after talking with Douglas, and that there was no misunderstanding about what the sentence would be.

Douglas disagreed with Pittman's characterization of their discussions. He said that Pittman told him he would be facing 7 years, or roughly 84 months' imprisonment instead of 136 months' imprisonment. In addition to not understanding the sentencing range, Douglas also said he did not understand what the plea agreement meant when it stated he would not be free to ask for a departure from the presumptive sentence. Douglas believed he would be able to ask for a sentence other than the high number in the grid box. Additionally, Douglas alleged he was factually innocent and asked the district court to allow him to withdraw his plea for those reasons.

On cross-examination, Douglas admitted that he failed to assert his lack of understanding pertaining to the sentencing range, his innocence, and lack of understanding about not being allowed to ask for a lesser sentence in his pro se motion. However, he did agree the district court told him his rights and went over the plea agreement with him. But Douglas then reiterated his belief he would be sentenced to seven years' imprisonment, despite the fact he failed to include anything about seven years in his pro se motion. At the conclusion of his testimony on cross-examination, Douglas admitted the hearing was the first time he alleged anything about the seven years' imprisonment.

After it heard closing arguments from both Douglas and the State, the district court found that Douglas failed to demonstrate good cause as set forth in K.S.A. 2019 Supp. 22-3210(d)(1). In so finding, the district court discussed each factor from *Edgar*, 281

5

Kan. at 36, and concluded that Douglas was represented by competent counsel, Douglas was not under duress when he entered the plea, and there was no evidence to support Douglas' allegation that he did not understand the terms of the plea. Ultimately the district court denied Douglas' motion, followed the terms of the plea agreement, and sentenced Douglas to 136 months' imprisonment for aggravated battery and 12 months in jail for each violation of the protection order, with the sentences for the violations of the protection orders to run concurrent with the aggravated battery charge.

Douglas has timely appealed the denial of his motion to withdraw his pleas.

ANALYSIS

On appeal, Douglas argues the district court abused its discretion when it denied his presentence motion to withdraw his pleas. "A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2019 Supp. 22-3210(d)(1). "[A]n appellate court reviews a district court's decision to deny a plea withdrawal motion and the underlying determination that the defendant has not met the burden to show good cause for abuse of discretion." *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Douglas, as the party asserting the district court abused its discretion, bears the burden of showing such abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

A district court typically considers three factors when it addresses whether a defendant has shown good cause: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or

6

unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *DeAnda*, 307 Kan. at 503 (quoting *Edgar*, 281 Kan. at 36). The above factors, known as the *Edgar* factors, are not to be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Douglas asserts he demonstrated good cause under the second and third *Edgar* factors to withdraw his plea, and the district court acted unreasonably when it rejected his testimony.

As support for his argument he demonstrated good cause, Douglas states: "[H]e was pressured into entering a plea and he did not understand the penalty." Douglas also points to two statements the district court made during the hearing on his motion: "We then went over what the plea agreement was, and it was indicated that it would be the high number . . . . I specifically went over with him that if he pled to this it carried anywhere from 31 months to 136 months in prison." But Douglas' arguments are contradicted by the record.

Pertaining to Douglas' argument he was under duress, Pittman testified he was prepared to proceed to trial and only changed course after Douglas' mother told him Douglas wished to take a plea instead of proceeding with trial. Pittman "had no expectations that this case was ever going to be for plea. It was brought to m[y] attention that I should talk to him, and I did and he indicated . . . [he] would do this, and we sat down and talked about it." Pittman's belief that Douglas was not going to plead is also supported by the fact that Douglas rejected the State's previous plea agreement offer. Moreover, the district court specifically asked Douglas during the plea hearing whether anybody was threatening him or forcing him to plead, and he said that nobody was forcing him to enter the plea.

Similarly, the record also refutes Douglas' argument he did not understand the terms of the plea. Pittman testified that he discussed the sentencing range with Douglas when they were discussing the plea agreement.

7

The written plea agreement signed by the State, Pittman, and Douglas contains the following pertinent language:

"2.  Upon Defendant's successful plea of guilty . . . *the Parties will recommend the high number in the appropriate sentencing grid box on the felony counts* [*sic*].

. . . .

"5.  The defendant agrees to serve this sentence in prison and is not free to ask for any departures from this presumptive sentence." (Emphasis added.)

The same language was verbally recited nearly verbatim to the district court by the prosecutor at the time of the plea hearing. Immediately following this, the district court asked Douglas if he understood the plea agreement, and Douglas told the district court he did.

Douglas' understanding of the fact that his sentence would be 136 months is also buttressed by attorney Pittman's testimony at the hearing on the motion to withdraw pleas:

"Q   [by the State]:  So it was your understanding that the sentence he would be getting would be 136 months?

"A:  No doubt about it.

"Q:  And that was conveyed to—I should ask, was that conveyed to Mr. Douglas?

"A:  Absolutely."

At the plea hearing the district court told Douglas the sentence for the aggravated battery count carried anywhere from 31 months' to 136 months' imprisonment. The district court asked Douglas again whether he understood, and Douglas told the district court he did. Moreover, the plea agreement, which Douglas signed and discussed with Pittman, listed the sentencing range on the aggravated battery offense as 31 to 136 months' imprisonment.

8

The district court's statements Douglas points to also fail to support his arguments. In addition to the statements Douglas quotes, the district court detailed the chain of events leading to Douglas entering the plea agreement. The district court also discussed how Douglas appeared cognizant throughout the hearing, the fact Douglas stated he read both documents and discussed them with Pittman, Douglas' testimony that nobody was forcing him to plea, Douglas' testimony that he understood the rights he was giving up by entering the plea, and the specific details of the plea agreement. These conclusions are also supported from the record of the plea hearing regarding the plea agreement. During the hearing, the district court provided Douglas ample opportunities to ask questions if he was confused about anything pertaining to the plea agreement, and Douglas repeatedly told the district court he understood the terms of the agreement.

Further, aside from his argument he was under duress when he pleaded guilty, none of the other arguments Douglas made at the hearing to withdraw his plea were made in his original pro se motion. Specifically, Douglas never argued in his pro se motion that he was innocent, that he did not understand the sentencing range, and that he did not know he was not allowed to ask for a lesser sentence, and he acknowledged as much at the hearing to withdraw his plea. Likewise, the first time he mentioned anything about the seven-year sentence he thought he was facing was at the hearing to withdraw his plea. The district court characterized Douglas' reticence to continue under the terms of the plea as buyer's remorse. But a defendant's hindsight determination a plea was not the best course of action, without more, is not sufficient good cause. See *State v. Schow*, 287 Kan. 529, 542, 197 P.3d 825 (2008).

In sum, Douglas essentially asks this court to reweigh the district court's view of the evidence and assessments of witness credibility. But that is generally not a function of appellate courts. See *State v. Schaefer*, 305 Kan. 581, 595, 385 P.3d 918 (2016). Moreover, as the State points out, the same district judge presided at both the plea hearing and at the hearing to withdraw his plea. Our Supreme Court has stated that a

9

judge in such situation is in the best position to observe the demeanor of a defendant and draw conclusions as to whether a plea was knowingly and intelligently made when there is contradictory testimony. *State v. Macias-Medina*, 293 Kan. 833, 839, 268 P.3d 1201 (2012).

Thus, Douglas' argument that the district court abused its discretion when it concluded he failed to demonstrate good cause under the second and third *Edgar* factors is not supported by the record. Accordingly, the district court did not abuse its discretion in denying Douglas' motion to withdraw his pleas.

Affirmed.