IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,720

STATE OF KANSAS,
*Appellee*,

v.

DYLAN BARBER,
*Appellant.*

SYLLABUS BY THE COURT

1.

When determining whether a defendant has established good cause to set aside his or her plea, courts should consider three factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.

2.

A showing of lackluster advocacy can support a finding of incompetent representation used to show good cause.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed March 19, 2021. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt,* attorney general, were with her on the brief for appellee.

1

The opinion of the court was delivered by

STEGALL, J.: Dylan Barber pled guilty to first-degree murder for killing his ex-girlfriend. Before sentencing, Barber moved to withdraw his plea arguing that his counsel was ineffective. Barber argued his counsel was ineffective because in his view, counsel failed to investigate a voluntary intoxication theory of defense after Barber told counsel he was on antidepressants at the time of the murder. The district court, however, denied Barber's motion to withdraw his plea, finding Barber failed to establish good cause.

On direct appeal, Barber argues the district court abused its discretion in denying his motion to withdraw his plea. But because the evidence establishes that Barber's counsel did in fact investigate a voluntary intoxication theory of defense, we deny Barber's claim and affirm the district court's decision to deny Barber's motion to withdraw plea.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018 Barber drove from Emporia, Kansas, to Wichita, Kansas, and stabbed his ex-girlfriend to death. After stabbing her to death, Barber called 911 and informed the dispatcher what he had done. The State ultimately charged Barber with premeditated murder, criminal threat, and criminal possession of a weapon.

The court appointed an experienced public defender to represent Barber. The State informed defense counsel it was willing to offer a hard 25 sentence to Barber if he pleaded guilty to premeditated murder. If Barber did not accept the plea, the State would pursue a 50 to life sentence. At that time, Barber was not willing to accept the plea and the court scheduled the case for trial.

Barber met with his attorney during the months before trial to review evidence and discuss possible defense theories. During these meetings, counsel provided Barber with discovery documents. Barber also informed counsel he was prescribed antidepressant medication a week before the incident. Barber told counsel he had been taking the medication when he committed the murder in the hopes that this would help his defense.

Counsel then reviewed Barber's medical records and consulted with a psychologist—Dr. Jarrod Steffan. Early on in the case, counsel informally spoke with Dr. Steffan about the name and dosage of Barber's antidepressant. Dr. Steffan informed counsel he did not believe Barber's medication would provide him with a viable defense. Dr. Steffan explained the side effects of the medication were lethargy and that this would not present enough factual justification to raise a voluntary intoxication defense. Dr. Steffan did not prepare a formal written statement until after Barber entered his plea and the defense was working on a mitigation strategy.

The defense then prepared for trial. A pretrial hearing was set a little over a month before trial to discuss several issues including the extent of photographic evidence the court would allow the State to present. Counsel showed Barber the photographs in preparation for the hearing which included gruesome photographs of the crime scene and autopsy photographs.

A couple of days before the hearing, Barber filed a pro se motion for new counsel, arguing his counsel was not interested in representing him and was unresponsive to him and his family. But on the morning of the pretrial hearing, Barber asked his counsel whether the plea offer was still available. Barber told counsel that if the plea offer was still available, he would like to plead. The State told Barber the plea offer was still available, and the court recessed to allow counsel to go over paperwork with Barber.

3

Before accepting the plea, Barber withdrew his motion to withdraw counsel. The court conducted the standard plea colloquy with Barber. Barber informed the court he was not currently on any medication and was entering the plea knowingly and voluntarily. Barber also told the court he was overall satisfied with his counsel's representation and assured the court there was nothing about counsel's representation that caused Barber to feel misled or coerced about entering a plea. The court accepted Barber's plea to first-degree murder and dismissed the remaining counts as agreed upon by the State. The court then set the case for sentencing.

Barber moved to withdraw his plea several weeks before his sentencing hearing. Barber's pro se motion stated that he accepted the plea "under massive amounts of stress." He stated that after talking to family members and "numerous attorneys," he decided the plea agreement was not in his best interest. A new attorney was appointed to Barber's case and counsel filed an amended motion to withdraw the plea alleging: (1) Barber was not given necessary discovery, and (2) Barber's previous counsel had not sufficiently investigated the effect of medications on his mental state during the murder.

At the hearing on his plea withdrawal motion, Barber testified that his previous counsel was uninterested in pursuing a voluntary intoxication defense and that counsel was only interested in Barber accepting a plea deal. Barber did admit, however, that he in fact received discovery from counsel and the Public Defender's Office. Barber testified that he told his family he did not want to see the photographs and face what he had done. Barber also stated that when he saw his ex-girlfriend's family at the hearing he did not want them to see the pictures and instead wanted to give them closure by pleading guilty.

After listening to both Barber and his previous counsel's testimony, the district court held that Barber failed to establish good cause to withdraw his plea. The court found Barber's previous counsel provided Barber with relevant and necessary discovery.

4

The court also found that Barber's previous counsel sufficiently investigated Barber's medical history and an involuntary intoxication defense. So in the end, the court denied Barber's motion.

ANALYSIS

We hold that the district court did not abuse its discretion when it denied Barber's motion to withdraw plea. As the district court correctly noted, the court may grant a defendant's request to withdraw a guilty plea for good cause shown within the discretion of the court any time before the sentence is adjudged. K.S.A. 2020 Supp. 22-3210(d)(1). When determining whether a defendant has established good cause to set aside his or her plea, courts should consider three factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Edwards*, 309 Kan. 830, 836, 440 P.3d 557 (2019) (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). Barber relies on the first *Edgar* factor, claiming counsel was incompetent.

We review the district court's good cause determination under an abuse of discretion standard. *Edwards*, 309 Kan. at 836. Thus, Barber must establish the district court's decision was: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

Barber claims the district court abused its discretion in finding counsel's investigation of Barber's medication legally sufficient to support a finding of competent representation. Barber claims his counsel's investigation amounted to "lackluster advocacy." See *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010) (stating that a

5

showing of lackluster advocacy can support the first *Edgar* factor). Thus, he claims the district court erred in refusing to find good cause.

Barber has failed to establish that the district court abused its discretion. Counsel did investigate the involuntary intoxication theory. Counsel researched Barber's medical history to obtain the name and dosage of the drug. Counsel then consulted Dr. Steffan to get his expert opinion on whether the drug's effects could support a voluntary intoxication theory. Dr. Steffan, however, informed counsel that the defense was not factually supported. Dr. Steffan explained the side effects of the medication were lethargy and that this would not present enough factual justification to raise a voluntary intoxication defense.

Barber complains that Dr. Steffan only discussed the physical effects of Barber's medication rather than how the medication affected Barber's mental state. As the record shows, however, counsel specifically asked Dr. Steffan whether the antidepressant could support a voluntary intoxication theory. Dr. Steffan—an expert witness often used by counsel—knew whether the medication would impact Barber's mental state. He purposefully did not mention the medication's effect on Barber's mental state because it had none.

We hold counsel's investigation of Barber's antidepressant medication legally sufficient to show that counsel provided adequate representation. Thus, the district court did not abuse its discretion when it found that Barber failed to establish good cause and denied his motion to withdraw plea. For this reason, we affirm the district court's decision.

Affirmed.

6