NOT DESIGNATED FOR PUBLICATION

No. 125,937

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARITY BLACKMON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Submitted without oral argument. Opinion filed April 19, 2024. Affirmed in part and dismissed in part.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GREEN, P.J., HILL and CLINE, JJ.


CLINE, J.:  Charity Blackmon challenges the district court's denial of her presentence motion to withdraw her plea and her motion for a durational or dispositional sentencing departure. On appeal, Blackmon charges the district court with committing both legal and factual errors in determining she did not provide good cause to withdraw her plea. And she claims the district court failed to properly consider her mitigating evidence when it found no substantial and compelling reasons to depart from the presumptive sentence for her crimes.

1

Because she has not shown the district court erred in denying her motion to withdraw her plea, we affirm that decision. And because we have no jurisdiction to review her departure motion since the district court imposed a presumptive sentence, we dismiss Blackmon's challenge to that decision.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Blackmon on March 30, 2021, with first-degree, premeditated murder and criminal possession of a firearm by a felon, four days after she ran over a man riding a bicycle, then shot and killed him. Attorney Stephen Brave was appointed to represent Blackmon on April 14, 2021. A few weeks later, Brave filed for a competency evaluation since Blackmon had been diagnosed with multiple mental disorders. The district court granted the motion, but after reviewing the evaluation report, it ruled Blackmon was competent to stand trial.

About one week before her trial was set to begin, Blackmon pled guilty to criminal possession of a firearm by a felon and an amended charge of second-degree murder. At the plea hearing, Blackmon stated that she did not have any mental health reasons that caused her problems in understanding the proceeding or making decisions. She also said she was satisfied with Brave's legal representation and was not coerced into taking the plea. Blackmon had no questions, nor did she voice any concerns about her plea.

About two weeks after her plea hearing, Blackmon filed a pro se motion to withdraw her plea. The motion alleged she felt "pressured to take" the plea and that she did not "have enough time to make [her] decision." She also maintained she had new evidence she wanted to present. Brave withdrew from the case, and Sam Kepfield was appointed as replacement counsel.

2

Kepfield filed two motions for an independent mental health evaluation along with a notice of intent to rely on mental disease or defect as a defense to the charges. In his first motion, Kepfield alleged a mental evaluation was needed to address Blackmon's state of mind at the time of the offenses. About a month later, Kepfield filed a second motion for a mental health evaluation, now asserting Blackmon's state of mind at the time the plea was entered should also be evaluated.

Next, Kepfield moved to withdraw Blackmon's plea. In this motion, Kepfield argued good cause existed to withdraw the plea because Brave "fail[ed] to explore [Blackmon's] mental state," and he "fail[ed] to prepare a viable defense based on her mental state." Kepfield's requested evaluations could not be completed before the hearing on the motions to withdraw the plea. But the district court signified it would entertain a request to continue or bifurcate the hearing to hear additional evidence if necessary.

Blackmon and Brave both testified at the motion to withdraw plea hearing. Blackmon's testimony focused mainly on the grounds she mentioned in her pro se motion to withdraw her plea. She told the district court she wanted to go to trial, but Brave "pressured" her into taking the plea offer. She said Brave explained that if she did not take the plea offer she could be facing a sentence of 50 years to life. She felt she did not have enough time to consider the plea because she had to make the decision in the week leading up to trial. And she said Brave told her he thought the plea offer would be "the best deal." She explained that the new evidence mentioned in her motion was another person who witnessed the altercation between Blackmon and the victim.

As for her mental health diagnoses, Blackmon testified that she discussed those "briefly" with Brave and told him about her mental state at the time of the shooting. She provided no specifics on her diagnoses or what she told Brave about her mental state. She acknowledged signing a release for Brave to review her therapist's records and said she

3

believed Brave reviewed those records. But she said he did not indicate he planned to explore the mental disease or defect defense.

Brave, on the other hand, testified that he never placed pressure on Blackmon to take a plea, but he made it clear to her with her trial approaching that she would need to decide whether to accept the State's plea offer. The parties had apparently been negotiating a plea deal for some time, and the offer Blackmon accepted had been extended several months before trial. Brave testified they were the primary setting for trial, so Blackmon had reached the point where she needed to decide whether to take the plea or go to trial.

Brave admitted they discussed the new witness Blackmon mentioned in her motion, but he did not believe her testimony would impact their defense. Brave acknowledged discussing possible defenses with Blackmon and said she preferred a defense based on claiming the victim's actions provoked her, which would hopefully lead to a conviction of a lesser charge. Brave was prepared to go to trial on this defense but believed it had a low likelihood of success. Given the significant amount of video footage and witnesses to the incident, Brave felt it was a bad case to try. He said he would have gone to trial if that is what Blackmon wanted, but she voluntarily decided to take the plea the week before trial.

Brave testified that he discussed Blackmon's mental capacity with her from the beginning of his representation. Blackmon told him about her mental health diagnoses— including posttraumatic stress disorder and bipolar disorder—and he reviewed her psychiatric records. But he said Blackmon did not want to pursue a mental disease or defect defense because she wanted to avoid the admission of comments she made to police about why she shot the victim. Blackmon mentioned her son in those comments, and she did not want him discussed at trial. For his part, Brave testified he did not believe this defense was viable because none of Blackmon's mental health diagnoses appeared to

4

impact her ability to form the intent to take the actions she did. He also mentioned she owned a business, was functioning in her day-to-day life, and had never been declared incompetent.

Brave testified Blackmon was deliberate and appeared to understand questions and respond appropriately when he met with her. Over the course of his representation, he met with Blackmon in person 12 times. They also met other times over videoconference and communicated often by email.

After Blackmon and Brave testified, the State played a 13-minute telephone call between Blackmon and her mother that took place the day before Blackmon signed the plea agreement and two days before the plea hearing. In that call, Blackmon's mother apparently wanted Blackmon to go to trial, but Blackmon told her the plea offer was the best deal she would get. Blackmon discussed the State's evidence against her, including video footage of Blackmon at the scene. Blackmon told her mother that she would still be able to argue for a durational sentencing departure even with the plea and that, with Blackmon's criminal history, she was looking at a lot of time in prison.

After the witnesses testified, Kepfield argued the district court should allow Blackmon to withdraw her plea because Brave should have pursued a mental health evaluation to examine Blackmon's actions at the time of the crime and when she entered her plea. He admitted there was no evidence that Brave coerced Blackmon to enter a plea but argued there was evidence to suggest she did not understand her plea. And he asked the district court to continue the hearing so an independent doctor could perform a mental evaluation.

The district court denied the request for a continuance and the motion to withdraw the plea after finding Blackmon did not show good cause to withdraw her plea. It later

5

denied Blackmon's motion for a durational sentencing departure and imposed a presumptive, 554-month sentence.

Blackmon now appeals the district court's denial of her motion to withdraw her plea and the denial of her departure motion.

REVIEW OF BLACKMON'S APPELLATE CHALLENGES

*Did the district court err in denying Blackmon's presentence motion to withdraw a plea?*

Before sentencing, a district court has discretion to allow a defendant to withdraw his or her plea if the defendant shows good cause to do so. K.S.A. 22-3210(d)(1). To determine whether a defendant has shown good cause, a district court generally considers three factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). All three so-called *Edgar* factors "need not apply in a defendant's favor in every case." *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). And they should not be applied mechanically or to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

Because the governing statute expressly affords the district court discretion in ruling on a defendant's presentence motion to withdraw a plea, we review that decision under an abuse of discretion standard. *State v. White*, 289 Kan. 279, 284, 211 P.3d 805 (2009). Appellate courts recognize three ways a district court can abuse its discretion. First, discretion is abused if the result reached is "arbitrary, fanciful, or unreasonable." *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). That is, no reasonable person would have come to the same conclusion if presented with the same record evidence. Next, a district court abuses its discretion if it disregards or improperly applies

6

controlling legal standards. *Edgar*, 281 Kan. at 38. Last, discretion is abused if substantial competent evidence does not support a factual finding on which the exercise of discretion or a legal conclusion in the decision is based. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). On review, we may not reassess witness credibility or reweigh evidence presented at the hearing on Blackmon's motion. And Blackmon bears the burden of demonstrating the district court abused its discretion. See *DeAnda*, 307 Kan. at 503.

While Blackmon's pro se motion to withdraw her plea relied on the second *Edgar* factor, Blackmon's attorney waived that argument at the hearing. After Blackman and Brave testified, Blackmon's attorney admitted no evidence supported that factor and focused on the other two. On appeal, Blackmon focuses on those same two factors. That is, she argues Brave, her plea attorney, was not competent and that her plea was not understandingly made.

## 1. *Legal standard to review Brave's competency*

Blackmon first argues the district court made a legal error by analyzing Brave's representation under an improper standard. To establish good cause to withdraw a presentence plea based on competency of counsel, a defendant must show their attorney provided "'lackluster advocacy.'" *State v. Herring*, 312 Kan. 192, 197, 474 P.3d 285 (2020). This is a less demanding standard than the Sixth Amendment constitutional ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is applied when a defendant attempts to withdraw a plea after sentencing. *State v. Bilbrey*, 317 Kan. 57, 64-65, 523 P.3d 1078 (2023). Blackmon argues that the district court evaluated Brave's competency under the more stringent constitutional standard instead of the lesser lackluster advocacy standard.

Blackmon does not explain why she believes the district court applied the wrong standard to evaluate Brave's legal representation, nor does she provide any record citations to support her claim. Instead, she simply disagrees with the district court's conclusion that Brave was competent, concluding that outcome means the court's analysis was wrong. But she offers no analysis to support her argument, and conclusory statements are not enough to show the district court erred. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 503, 505 P.3d 775 (2022).

A district court need not expressly use the words "lackluster advocacy" on the record in ruling on a presentence motion to withdraw a plea based on incompetent counsel. It need only evaluate whether counsel's representation was competent, which the court did here. See *Bilbrey*, 317 Kan. at 66-67. We therefore find Blackmon has abandoned her argument that the district court abused its discretion by committing a legal error because she failed to adequately brief it. See *Joritz*, 61 Kan. App. 2d at 503.

2. *Brave's representation was not lackluster*

Blackmon next asserts that the district court made a factual error in finding Brave was competent. She argues Brave's representation was lackluster since he did not consult an expert to investigate a mental disease or defect defense. In her eyes, Brave should have pursued this defense after she told him about her mental health history.

Blackmon largely relies on *State v. Barber*, 313 Kan. 55, 482 P.3d 1113 (2021), as legal support for her argument. In *Barber*, the defendant filed a presentence motion to withdraw a plea. Barber contended that his plea attorney was ineffective because his attorney failed to investigate a voluntary intoxication theory of defense after he told his attorney he was on antidepressants at the time of the crime. Ultimately, the Kansas Supreme Court held "because the evidence establishes that Barber's counsel did in fact

8

investigate a voluntary intoxication theory of defense," it would affirm the district court's denial of Barber's motion to withdraw plea. 313 Kan. at 55.

But just because *Barber* found that a plea attorney's consultation with a psychologist was sufficient evidence to show the competency of counsel does not mean the inverse is also true:  A failure to consult a psychologist before a plea hearing amounts to incompetent representation. And again, Blackmon provides no reason why the two statements are logically equivalent. *Barber* does not stand for this proposition, nor does Blackmon cite another case in Kansas which does. *Barber* stands for nothing more than, under the circumstances of that case, an attorney's consultation with an expert did not amount to incompetent representation.

Blackmon's argument commits the logical mistake known as "inverse error." That is, she incorrectly infers the inverse of *Barber*'s holding without providing any reason why this is true. We can see the logical fallacy of Blackmon's argument when we analyze the premises on which it is based:

- Blackmon's premise 1:  A plea attorney who consulted with a psychologist provided competent counsel.
- Blackmon's premise 2:  Brave did not consult with a psychologist.
- Conclusion:  Brave did not provide competent counsel.

The first premise does not imply that all plea attorneys must consult with a psychologist to be competent; there could be several reasons why (as here) the attorney chooses not to do so. Without more, Blackmon's inductive argument cannot prove her conclusion to be true.

Other than relying on *Barber*, Blackmon notes that her testimony at the hearing "did not align" with Brave's testimony. Blackmon points out that she testified she and

9

Brave only briefly discussed her mental health and he did not indicate he planned to explore a mental disease or defect defense. But Blackmon's own self-serving testimony does not discount the substantial competent evidence that supports the court's factual findings.

After the district court heard the testimony of Brave and Blackmon, it gave more weight to Brave's testimony. The court found Brave's legal representation was "very competent, extremely thorough," evidencing that it found Brave's testimony more credible. Again, we cannot evaluate or reweigh witness testimony on appeal. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011) (noting appellate courts do not reweigh the evidence or assess witness credibility).

The district court noted that Brave interacted extensively with Blackmon, observed her, and reviewed her mental health records. And it found Brave's testimony that he discussed Blackmon's mental health issues with her in detail to be more credible. Brave testified that he investigated the defense of mental disease or defect by obtaining a competency evaluation for Blackmon and reviewing her psychiatric records. Blackmon was found competent to stand trial, and her medical records aligned with the history she provided to him. Brave also discussed the altercation with Blackmon and found she knew what happened, which was not consistent with her suffering a mental break or not forming the requisite intent. And he testified the defense Blackmon wanted to pursue— relying on a claim that the victim provoked her—was not consistent with a mental disease or defect defense, nor did Blackmon want to pursue the mental disease or defect defense.

Contrary to Blackmon's claim that Brave did not investigate a defense of mental disease or defect, the district court relied on Brave's testimony to find Brave investigated the defense and concluded it did not apply. The court also found Blackmon's claim that Brave should have pursued this defense contradicted Brave's testimony that Blackmon did not want such a defense pursued.

10

Since there is substantial competent evidence to support the district court's factual findings on which its decision relied, we find the court did not err in denying Blackmon's motion.

3. *Motion for a continuance to allow for a mental health evaluation*

Next, Blackmon contends the district court should have continued the hearing "to allow her new counsel to consult an expert in psychology and mental health disorders." Blackmon argues a continuance would have allowed for evidence that either tended to prove Brave was ineffective because the mental disease or defect defense was viable or prove that the defense was not viable. Like the denial of Blackmon's presentence motion to withdraw her plea, a denial of a continuance is reviewed for abuse of discretion. *State v. Haney*, 299 Kan. 256, 259-60, 323 P.3d 164 (2014).

Much like her previous arguments, Blackmon does not explain why she was entitled to a continuance or how the district court abused its discretion in denying her one. The district court denied Blackmon's request for a continuance because there was "no evidence presented here, beyond speculation, that there was a defense of mental disease or defect." The court compared Blackmon's request to a fishing expedition and "possible misconduct by an attorney to pursue something that's gonna cause a delay in a case." And again on appeal, Blackmon only offers speculation about what a mental health evaluation may have revealed.

As explained above, we find substantial competent evidence supported the district court's finding that Brave competently investigated the defense of mental defect or disease and decided not to pursue it. Therefore, we agree with the district court that further investigation of this defense through an expert was unwarranted and would be purely speculative. It would also be futile, since Brave testified Blackmon did not want to pursue this defense. Blackmon has not contested this point on appeal, nor did she provide

11

contrary testimony at the hearing. As the district court put it, "there's no indication here that Ms. Blackmon ever wanted to run that or chose to run that" affirmative defense.

Under these circumstances, we find the district court did not abuse its discretion in denying Blackmon's request for a continuance.

4. *Ability to understand plea*

Blackmon finally argues that her plea should be set aside under the third *Edgar* factor "because evidence was introduced that she suffered from a neuro-cognitive disorder and was not clear on the consequences of entering a plea." The portion of the record Blackmon cites in support of this argument is Kepfield's argument to the district court that in Blackmon's telephone call with her mother, Blackmon misreported the amount of prison time the State would agree to propose.

First, the content of the call is not in the record. Blackmon is asking us to reverse the district court's decision based on unsworn, unchecked commentary by her attorney on evidence which is not in the record. "Assertions or arguments of counsel before the trial court, the appellate court, or in an appellate brief are not evidence and do not remedy inadequacy in the record on appeal." *Kenyon v. Kansas Power & Light Co.*, 17 Kan. App. 2d 205, Syl. ¶ 3, 836 P.2d 1193 (1992). Blackmon bears the burden of designating the record to support her claim and, without such a record, we presume the action of the district court is proper. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 917, 416 P.3d 999 (2018).

Next, the State challenged Kepfield's interpretation of Blackmon's comments on the call, arguing below that Blackmon's comments on the call tracked with Brave's testimony about the status and progress of the plea negotiations. Again, the timeline of events places Blackmon's call with her mother on March 16, 2022. Blackmon met again

with Brave and signed the Acknowledgment of Rights and Entry of Plea the next day, and her plea hearing occurred two days later, on March 18, 2022. So even if Blackmon was unaware of the final terms of the plea agreement when she spoke to her mother, that does not mean Blackmon did not understand those terms in the following days when she signed and entered her plea.

The State also reminded the district court that Blackmon admitted at the hearing on her motion to withdraw the plea that the plea agreement she signed and the district court's recitation of it at her plea hearing "matched up" with the information Brave had given her and the Acknowledgment of Rights and Entry of Plea, which she signed the day before she entered her plea.

As the district court noted, at her plea hearing Blackmon stated there were no "medical, physical or mental health reason[s]" which prohibited her from understanding her plea. And in the written Acknowledgment of Rights and Entry of Plea, she expressly acknowledged that she knew of "no reason why [her] mental competence should be questioned." She also informed the court that she was satisfied with Brave's services and that she had read and gone over the Acknowledgment of Rights and Entry of Plea with Brave. She had no questions about this document or her plea. Blackmon did not recant any of this testimony at the hearing.

In finding that Blackmon understood her plea, the district court also relied on Blackmon's testimony that this was not the first time she had entered a plea. Blackmon testified she had pled in a prior felony case, was familiar with what plea agreements and acknowledgment of rights forms look like, and understood how the sentencing grid works. She also testified she understood she was pleading to a severity level 1 offense and her criminal history score was B, and said Brave showed her where she fell on the sentencing grid. And she testified she knew Brave planned to request a downward durational departure but that Brave did not guarantee the court would grant the request.

13

In short, Blackmon provided no indication at her plea hearing or the hearing on the motion to withdraw her plea that she did not understand her plea. We therefore find substantial competent evidence to support the district court's finding that Blackmon did not provide good cause to withdraw her plea on this basis. We therefore affirm its decision denying Blackmon's motion.

*Did the district court err in denying Blackmon's departure motion?*

Blackmon asserts the district court also erred in denying her departure motion. While she acknowledges her presumptive sentence is "generally" not appealable, she asks us to review it anyway "because the district court failed to properly consider her mitigating evidence."

It is well-settled law that we have no jurisdiction to review a presumptive sentence. K.S.A. 21-6820(c)(1) states an appellate court "shall not review" a presumptive sentence. And the Kansas Supreme Court has been exceptionally clear that the Legislature "made a deliberate choice in 1995 to eliminate appeals of presumptive sentences." *State v. Huerta*, 291 Kan. 831, 837, 247 P.3d 1043 (2011). This is true, even if presumptive sentences imposed "result from partiality, prejudice, oppression, or corrupt motive." 291 Kan. at 837.

We therefore dismiss Blackmon's appeal of the district court's decision on her durational departure motion for lack of jurisdiction.

Affirmed in part and dismissed in part.

14