NOT DESIGNATED FOR PUBLICATION

No. 126,201

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SIDNEY W. CLARK,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Oral argument held February 10, 2026. Opinion filed June 12, 2026. Affirmed.

*Wendie C. Miller*, of Kechi, for appellant.

*Bach T. Hang*, assistant district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., CLINE, J., and CAREY L. HIPP, District Judge, assigned.

PICKERING, J.: This case concerns the district court's resentencing of Sidney W. Clark following the State's motion to correct an illegal sentence. On remand from the Kansas Supreme Court, the district court resentenced Clark and imposed his original sentence of 460 months in prison. Clark appeals, claiming numerous issues. After a thorough review, we find no error by the district court and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

This case has wound its way through our court system on a tortured path best summarized by the Kansas Supreme Court:

"In February 2005, Clark pled guilty to one count of aggravated criminal sodomy, a severity level 2 person felony, based on conduct that occurred in January 2004. At Clark's sentencing in June 2005, the district court determined his criminal history score was a B. This score was based in part on a 2000 Oklahoma conviction for placing bodily fluids on a government employee. The district court classified this conviction as a person felony and sentenced Clark to the aggravated term of 460 months in prison.

"In 2017, Clark filed a pro se motion to correct an illegal sentence. He argued his Oklahoma conviction for placing bodily fluids on a government employee was not comparable to any Kansas offense. Clark identified the closest Kansas offense to be battery against a law enforcement officer, which criminalized intentional contact with another person when done in a rude, insulting, or angry manner. But Clark alleged his Oklahoma conviction stemmed from an incident in which he involuntarily spit on arresting officers after they used pepper spray on him and such accidental conduct would not have qualified as rude, insulting, or angry behavior under the Kansas statute. Thus, he claimed his Oklahoma conviction should have been classified as a nonperson felony because no Kansas offense was comparable to the Oklahoma offense of placing bodily fluids on a government employee.

"The district court denied Clark's motion. The court explained that for the purposes of determining an offender's criminal history score, the out-of-state offense and the Kansas offense being compared need not be "identical with identical elements." Instead, the offenses need only be comparable. The district court concluded the Oklahoma offense of placing bodily fluids on a government employee was comparable to the Kansas offense of battery against a law enforcement officer. As a result, the district court ruled Clark's Oklahoma conviction was properly classified as a person felony. The Court of Appeals reversed in [*State v. Clark*, No. 119,076, 2019 WL 1746772, at *6

(Kan. App. 2019) (unpublished opinion),] *Clark I*. Applying *Wetrich*, the panel held the Oklahoma offense of placing bodily fluids on a government employee is not comparable to the Kansas offense of battery against a law enforcement officer because the elements of the Oklahoma offense are not identical to or narrower than the Kansas offense. *Clark I*, 2019 WL 1746772, at *2-5. Accordingly, the panel vacated Clark's sentence and remanded the case for resentencing with directions to recalculate Clark's criminal history score with his Oklahoma conviction classified as a nonperson felony. 2019 WL 1746772, at *6.

"The State did not file a petition for review, and the *Clark I* mandate issued. On remand, a new presentence investigation (PSI) report classified Clark's Oklahoma conviction as a nonperson felony, lowering his criminal history score from B to C.

"Resentencing was scheduled for July 2019. At that hearing, the district court acknowledged that recent legal developments had cast doubt on whether Clark should be resentenced in accordance with *Wetrich*. The district court continued the hearing so the parties could address the recent caselaw developments. Both parties filed written memoranda addressing the appropriate law for resentencing.

"At a hearing on August 16, 2019, the district court found Clark had a criminal history score of C and sentenced him to the aggravated term of 216 months. The State objected, arguing that intervening caselaw since *Clark I* compelled the district court to resentence Clark in accordance with the law in effect in 2005; otherwise, Clark's sentence would be illegal. However, the district court ruled that it lacked authority to depart from the appellate court's mandate to resentence Clark with a criminal history score of C.

"The State appealed. And in *Clark II*, the panel held the district court erred because Clark's 2005 sentence was legal when pronounced and subsequent changes in the law could not render it illegal and subject to correction under K.S.A. 2020 Supp. 22-3504. Thus, the panel concluded that Clark's Oklahoma conviction for placing bodily fluids on a government employee should be classified as a person offense. *Clark II*, 2020 WL 1903820, at *3. The panel also rejected Clark's argument that the district court was bound by the mandate in *Clark I*, reasoning that an intervening change in law created an exception to the mandate rule. *Clark II*, 2020 WL 1903820, at *4. The panel vacated

3

Clark's 2019 sentence and remanded the case for resentencing." *State v. Clark*, 313 Kan. 556, 558-60, 486 P.3d 591 (2021) (*Clark III*).

The Supreme Court found that Clark's 2019 sentence was illegal because:

"[T]he law from the date of his original sentence should control. After all, this case arose from Clark's 2017 motion to correct his 2005 sentence. Clark's resentencing in 2019 only occurred because *Clark I* held his 2005 sentence was illegal—a holding that became erroneous as a result of decisions we issued prior to Clark's resentencing in 2019. Thus, if Clark's sentence was lawful in 2005, he should have never been resentenced in 2019." *Clark III*, 313 Kan. at 572-73.

Accordingly, the *Clark III* court applied the law as it existed in 2005 and found Clark's 2005 sentence—that scored the Oklahoma felony as a person felony—was legal, and his 2019 sentence—that scored the Oklahoma felony as a nonperson felony—was illegal. 313 Kan. at 573, 575. The court also found that the mandate rule did not render Clark's 2019 sentence legal because an illegal sentence may be corrected at any time. The court acknowledged the district court had been "placed in the unenviable position of having to choose between a Court of Appeals mandate and Kansas Supreme Court precedent with no clear direction on how to proceed." 313 Kan. at 576.

The *Clark III* court noted that the district court could have corrected the illegal sentence following compliance with the Court of Appeals mandate. Because it did not, the court found that Clark's Oklahoma conviction for placing bodily fluids on a government employee must be classified as a person felony and he should be resentenced. 313 Kan. at 576. The court noted the case would have been more easily resolved if the State had petitioned for review of *Clark I*. Still, the State's appeal in *Clark II* was not barred because an illegal sentence may be corrected at any time. *Clark III*, 313 Kan. at 576.

4

The Supreme Court concluded that, "[b]ased on the foregoing analysis, we affirm the judgment of the Court of Appeals, reverse the judgment of the district court, vacate Clark's 2019 sentence, and remand for resentencing consistent with this opinion." 313 Kan. at 578.

The Supreme Court's mandate issued on June 15, 2021. For reasons unclear, the district court took no action until August 2022, and Clark's attorney entered his appearance on August 31, 2022. At the same time, counsel filed a motion for discovery. The next day, counsel moved to withdraw Clark's initial 2005 plea, asserting that Clark was innocent, wrongfully convicted, and that "only now can the manifest injustice of the conviction come to light." Counsel also filed nearly a dozen typical pretrial motions.

On September 13, 2022, Clark moved to continue sentencing from September 29, 2022. He asserted he needed time to retain experts to support mitigation at sentencing. He also asserted that, before he could "effectively work with the experts," counsel needed all the requested discovery. On September 19, 2022, Clark filed a motion for departure findings at sentencing and renewed his previously filed departure motions. Clark also argued his "criminal history is aged and not reflective of who he is as a person today."

The day before sentencing, Clark filed a motion to challenge his criminal history and presentence investigation (PSI) report. His motion asserted a general objection to his criminal history and "specifically dispute[d] all paragraphs of said Pre-sentence Investigation Report." He contended the PSI report failed to include required attachments and, as a result, violated due process. Clark also claimed his conviction at issue for sentencing was based on an improper plea and claimed an alibi, misidentification by the victim, and exculpatory DNA. He disputed "all paragraphs" of the PSI report because he "may not have been represented by counsel as required." Finally, Clark raised three specific objections to his Oklahoma conviction, asserting it was incorrectly labeled as a

5

felony, was improperly classified as a person felony, and was not comparable to a Kansas offense.

At the resentencing hearing, the State objected to a continuance. The State also argued that Clark's motion to withdraw his plea was untimely because he only had until April 2010 to timely file his motion to withdraw his plea and "there's nothing in the motion to withdraw [his] plea . . . that would excuse that delay."

Clark's counsel argued it was "pretty irregular" to appear at a sentencing hearing without having first reviewed the discovery. Counsel suggested he had not seen a single police report and was "totally unable to argue any mitigating circumstances about the facts of the case." Counsel also explained that Clark believed his conviction was a violation of due process and requested a continuance, a copy of standard discovery, and authorization to issue subpoenas to law enforcement

> "so that I could pursue some of these things that I'm hoping to learn more about so that
> when we come back to your sentencing/resentencing hearing in the future would be able
> to both argue about mitigating circumstances or factors about the facts of the case but
> also argue some of those same facts as grounds that might support an argument that Mr.
> Clark's conviction is wrongful."

Clark's counsel acknowledged that Clark had previously moved to withdraw his plea, but "[H]e would like to renew his challenge and litigate that again" along with a variety of issues "about alibi and DNA and confidential informants or jailhouse informants and impeachment material about the complaining witness and any other witnesses." Counsel suggested that "the best way to honor Mr. Clark's due process rights are to set this over for a continuance." He explained a continuance would allow him time to retain experts who could help develop some mitigation factors and "help us with the issues about the underlying conviction itself and whether it's [a] wrongful conviction and also whether or not the plea agreement should be withdrawn."

6

The State argued Clark was "forbidden" to raise a motion to withdraw his plea. It argued res judicata applied and Clark failed to file within the statutory timeframe without explaining the late filing. The State concluded, "Lastly, Judge, we are here on a mandate. The mandate says resentence the defendant pursuant to Criminal History Category B. That's what the mandate is. Your authority to issue rulings in this case is limited to the sentencing in this matter and therefore, you must go forward."

The district court denied Clark's motion to withdraw his plea because the previous motion "was determined, was a final decision, been appealed and affirmed on appeal and we're not going to reopen that issue." The court also denied the motion for continuance, finding no support for continuing the resentencing. The district court found this dispositive of Clark's pretrial discovery motions and dismissed the motions.

The parties proceeded to sentencing using the PSI report from March 2005. The State objected to Clark's challenge to his criminal history because Clark "didn't give the State proper notice and basically this is a motion if you review it that just throws all possible objections up against the wall." The State continued, "I would remind the Court that the defendant has now twice in previous sentencing hearings admitted that the criminal history was accurate so I think this is just a last minute attempt to throw everything that he could."

The district court found Clark had a criminal history score of B, stating:

> "I'm satisfied that at least twice previously, 2005 and 2019, the defendant had a chance to take and challenge the criminal history. Judge Chambers found the criminal history in each of those cases. . . . Nothing new has arisen and therefore the previous determination that he's Criminal History Category B twice made is still the correct finding so I will find criminal history is B."

7

Clark moved for a departure sentence and suggested the district court sentence him with a C criminal history score instead of his present B criminal history score. He also argued his criminal history was "not reflective of who he is today" and that he has productively used his time in prison and under supervision. Clark asserted he had gotten jobs at Hutchinson News and Tyson while being supervised on parole and had participated in both the Batterer's Intervention Program and the sex offender treatment program.

The State requested imposition of Clark's original sentence because of the serious nature of the pled offense. To illustrate the serious nature of the crimes leading to Clark's arrest, the State read portions of the probable cause affidavit. The State also argued the plea agreement was already a "real break in the case" because Clark had been charged with "aggravated kidnapping, multiple counts of rape, multiple counts of aggravated sodomy," and received a plea for one count of aggravated sodomy. The State asked the district court to affirm all of the trial court's original decisions "and execute the sentence as per the sentencing guidelines."

Clark requested the district court "go ahead and zero out the attorney's fees and the application fee today" under *State v. Robinson*, 281 Kan. 538, 543-44, 132 P.3d 934 (2006).

During his allocution, Clark argued the State should have been bound by the mandate in *Clark I* because it did not petition for review. He also argued that the Supreme Court erred by comparing a felony to a misdemeanor. Clark suggested that resentencing him would simply create another illegal sentence.

The district court responded:

"All right. I'm sure we'll find out whether I'm, we're going to find out whether I'm committing error here today but I believe that we're following the mandate of the Kansas Supreme Court and therefore, I do not, I am not going to grant the departure. I'm going to reimpose the same sentence that Judge Chambers did for the same reasons as having to do with the kind of aggravated nature of this crime, so it's 460 months Department of Corrections, post release is 36 months and good time credit of up to 15%. Costs $193.00, KBI fee $400, restitution for four nine thirty-three eighty and I'm going to go ahead and reimpose the total of $1,210 BIDS including the application fee."

Clark appealed.

ANALYSIS

I.   *The District Court Did Not Lack Jurisdiction to Resentence Clark in 2022, and the Case Was Not Moot in 2022*

Clark argues "the State acquiesced to the Court of Appeals' decision when they had the opportunity to petition for review to the Kansas Supreme Court, but failed to do so and could not thereafter argue that Clark received an illegal sentence." He asserts that, because of the State's failure to petition for review in *Clark I*, "the courts were without jurisdiction to hear the State's illegal sentence arguments concerning issues argued in the 2019 appeal and without jurisdiction to resentence Mr. Clark again in 2022."

The *Clark III* court, however, has already addressed this argument:

"We would be remiss not to mention the State could have avoided this complicated analysis and saved the district court from the difficult dilemma it faced at the 2019 resentencing, if it had simply filed a petition for review of *Clark I*. After all, *Murdock II* was released on the same date. Ordinarily, the State's failure to do so would have been fatal. *Building Erection Svcs. Co.*, 312 Kan. 432, Syl. ¶ 2, 475 P.3d 1231 ("A party who fails to petition the Kansas Supreme Court for review of a Court of Appeals

9

decision is bound by the holding of that decision."). However, the Legislature's broad grant of authority enabling courts to correct an illegal sentence at any time resurrected the State's challenge. K.S.A. 2020 Supp. 22-3504(a). But for this statute, the State's neglect would likely have produced a different outcome." *Clark III*, 313 Kan. at 576-77.

Therefore, following Clark's 2019 resentencing, the appellate courts had jurisdiction to hear the State's illegal sentence arguments related to that sentence, and the district court had jurisdiction to resentence Clark in 2022 following *Clark III*.

Clark also challenges his sentence based on mootness. He asserts that, because he was released to postrelease supervision in August 2019 following resentencing, the State's appeal was moot. In support, Clark relies on *State v. Samber*, No. 119,128, 2019 WL 1303163, at *3 (Kan. App. 2019) (unpublished opinion). But *Samber*, and the cases it cites, are easily distinguishable. There, the defendant objected to his criminal history score, arguing the district court incorrectly classified a 2007 Ohio attempted robbery conviction as a person felony. If the conviction had been scored as a nonperson felony, Samber's criminal history score would have been reduced. While his case was pending on appeal, Samber completed the prison portion of his sentence. As a result, the panel deemed the issue moot and dismissed that portion of Samber's appeal. 2019 WL 1303163, at *3.

As the *Samber* panel noted, a change to a defendant's criminal history score does not affect the length of postrelease supervision, and a defendant "who is resentenced is not entitled to a credit against his or her period of postrelease supervision for the amount of time served in prison in excess of the prison time imposed at resentencing." 2019 WL 1303163, at *2. The defendant's criminal history score in *Samber* and the cases it cited were moot because a favorable ruling could not reduce the amount of prison time the defendant already served and did not affect the defendant's postrelease supervision. See

K.S.A. 22-3717(d)(1) (length of postrelease supervision is determined by severity level of crime of conviction, not defendant's criminal history).

In contrast, the State argues Clark's 2019 sentence was illegally calculated in a way that impermissibly *reduced* Clark's sentence. Consequently, if the State prevails on appeal, there would be an *increase* in the amount of time Clark must serve. Because Clark was required to serve less time than he would have served if properly sentenced, the issue was not moot.

II.     *An Illegal Sentence May Be Raised at Any Time and Is Not Subject to the Law of the Case Doctrine*

On appeal, Clark argues that "the legality of his sentence was established" in 2017 when another panel of this court ruled that his 2005 sentence was illegal and neither party petitioned for review. He contends that the law of the case doctrine applies and the State cannot subsequently challenge the legality of Clark's sentence.

Again, the Supreme Court addressed this procedural wrinkle in *Clark III*. The court noted that, if an illegal sentence could not be corrected at any time, the State's failure to petition for review in *Clark I* "would likely have produced a different outcome." *Clark III*, 313 Kan. at 576-77. But, because an illegal sentence may be corrected at any time, the State's failure to petition for review was not fatal. This ruling also implied that the law of the case doctrine does not apply to motions to correct an illegal sentence. 313 Kan. at 576-77.

Finally, citing *State v. Hambright*, No. 124,878, 2024 WL 4246676 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 864 (2025), Clark notes that we are "'duty bound to follow Kansas Supreme Court precedent unless the court has indicated it

is departing from its position.'" He contends that we should review the legality of his 2019 sentence under the law as it then existed.

These arguments directly contradict and ignore the Supreme Court's holding that his original sentence was legal under the law as it existed in 2005, and his 2019 sentence was illegal. *Clark III*, 313 Kan. at 574.

III. *This Appeal Is Not a "Direct Appeal"*

Clark contends that, because his 2019 sentence was vacated and remanded for resentencing, "this appeal must be construed as a direct appeal from resentencing."

The Kansas Supreme Court has previously rejected this argument in *State v. Jacobson*, 319 Kan. 70, 73, 552 P.3d 1239 (2024). There, the defendant made the same argument, asserting that because his original sentence was vacated, his current appeal was a direct appeal "rather than a continuation of his 2019 motion to correct an illegal sentence." In declining to adopt Jacobson's argument, the Supreme Court noted that, in *Clark III*, it had held that "'for purposes of determining the legality of Clark's sentences, the law from the date of his original sentencing should control.'" 319 Kan. at 76. The *Jacobson* court clarified that a direct appeal is an appeal that "is directly 'from the judgment of conviction.'" 319 Kan. at 77.

Likewise, Clark's appeal is not an appeal from the judgment of conviction. Instead, a remand for resentencing "is part of the journey initiated by such a motion [to correct an illegal sentence], which ends once the illegal sentence is corrected. See *Clark III*, 313 Kan. at 572-73." *Jacobson*, 319 Kan. at 76. The *Clark III* court explained that "the issues in this appeal arise under the illegal sentence statute" rather than as a direct appeal. 313 Kan. at 578. Thus, Clark's sentence was legal in 2005, and he cannot rely on subsequent developments to challenge his sentence's legality. 313 Kan. at 572-73.

IV.    *The District Court Did Not Err When It Sentenced Clark with a Criminal History Score of B Despite Clark's Challenge to His Criminal History*

*Standard of Review*

"Interpretation of the mandate and a determination of the district court's compliance with that mandate involve questions of law, over which this court has unlimited review." *State v. Reed*, 31 Kan. App. 2d 1025, 1026, 77 P.3d 153 (2003).

*Discussion*

Clark argues the district court erred when it included his prior convictions to calculate his criminal history because the State failed to prove the validity of those prior convictions. Clark contends that the controlling sentencing statute is K.S.A. 2022 Supp. 21-6814, which was in effect at the time of his September 29, 2022 resentencing hearing and sets forth the procedure for an offender to challenge his or her criminal history worksheet.

The State has the burden to prove criminal history by a preponderance of the evidence. K.S.A. 2022 Supp. 21-6814(a). Under K.S.A. 2022 Supp. 21-6814(c), an offender is required to "immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet." Once written notice is provided, "[t]he [S]tate shall have the burden of proving the disputed portion of the offender's criminal history." K.S.A. 2022 Supp. 21-6814(c).

Clark suggests that his written general challenge to his criminal history worksheet required the State to prove the entirety of his criminal history. Clark asserts we must remand for resentencing with a criminal history score of I because the State did not prove Clark's criminal history by a preponderance of the evidence. We disagree.

13

Clark's argument is unpersuasive because he was resentenced pursuant to the Kansas Supreme Court's issued mandate. The *Clark III* court explained that "'the mandate rule is a statutory imperative that requires lower courts follow the mandates issued by appellate courts.'" 313 Kan. at 575. Under K.S.A. 60-2106(c), an appellate court's mandate and opinion "shall be controlling in the conduct of any further proceedings necessary in district court."

"Where the appellate court has decided a particular issue, by explicit language or by necessary implication, the district court is foreclosed from reconsidering such an issue." *Reed*, 31 Kan. App. 2d at 1026. Here, the *Clark III* court concluded by stating: "Based on the foregoing analysis, we affirm the judgment of the Court of Appeals, reverse the judgment of the district court, vacate Clark's 2019 sentence, and remand for resentencing consistent with this opinion." 313 Kan. at 578. As such, the district court was duty-bound to follow the mandate of the *Clark III* court.

On remand, the State argued, "[W]e are here on a mandate. The mandate says resentence the defendant pursuant to Criminal History Category B. That's what the mandate is. Your authority to issue rulings in this case is limited to the sentencing in this matter and therefore, you must go forward." On appeal, the State makes a similar argument: "This mandate required the imposition of the original, legal sentence."

The State's interpretation of how to proceed with the mandate is supported by the language found in the *Clark III* opinion. The Supreme Court began its analysis by agreeing with the *Clark II* panel that the law at the date of Clark's original sentencing controlled. The court continued:

"After all, this case arose from Clark's 2017 motion to correct his 2005 sentence. Clark's resentencing in 2019 only occurred because *Clark I* held his 2005 sentence was illegal—a holding that became erroneous as a result of decisions we issued prior to Clark's

14

resentencing in 2019. Thus, if Clark's sentence was lawful in 2005, he should have never been resentenced in 2019." *Clark III*, 313 Kan. at 572-73.

A subsequent heading in the opinion also states: "Clark's Original Sentence is Legal Under the Law in 2005, and Clark's 2019 Sentence is Illegal[.]" 313 Kan. at 573. Read as a whole, *Clark III* clearly indicates that Clark's original sentence was legal and he should not have been resentenced in 2019. But while discussing whether the *Clark I* mandate rendered Clark's sentence legal, the *Clark III* court stated: "Clark's 2019 sentence is illegal, and he should be resentenced with his Oklahoma conviction for placing bodily fluids on a government employee classified as a person felony." 313 Kan. at 576. In 2005, Clark's Oklahoma conviction was correctly classified as a person felony in his legal sentence. The district court thus did not err in sentencing Clark with a criminal history score of B.

V. *The District Court Did Not Violate Clark's Right Against Double Jeopardy*

*Preservation*

Clark did not raise a double jeopardy challenge in the district court. Generally, "issues not raised before the district court may not be raised on appeal." *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). There are, however, a few exceptions to the general rule that a new legal theory cannot be asserted for the first time on appeal. Citing *State v. Lehman*, 308 Kan. 1089, 1094, 427 P.3d 840 (2018), Clark suggests we may address this issue as one that is "argued only on admitted facts, it would determine Clark's appeal if the Court ruled in Clark's favor, and involves a fundamental right." In light of these exceptions, we will review this issue.

*Standard of Review*

"Whether a double jeopardy violation occurs under either the United States or Kansas Constitutions is a question of law subject to unlimited review." *Lehman*, 308 Kan. at 1094.

*Discussion*

The Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy." U.S. Const. amend. V. This prohibition against double jeopardy "'protects against multiple punishments for the same offense.'" *Lehman*, 308 Kan. at 1094. In *Lehman*, the Supreme Court held that the appropriate inquiry for whether an increase in the severity of a sentence constitutes a double jeopardy violation "is whether the defendant had a legitimate expectation of finality in his or her sentence." 308 Kan. at 1094.

In *Lehman*, the defendant pled guilty to aggravated sexual battery and was sentenced to 31 months in prison with 24 months' postrelease supervision. Almost four years later, the State moved to correct an illegal sentence, arguing that Lehman was subject to lifetime postrelease supervision. Before the district court heard the State's motion, however, the Department of Corrections released Lehman from postrelease supervision. In other words, Lehman had completed both portions of his sentence: prison and postrelease supervision. Nevertheless, at the hearing on the State's motion to correct an illegal sentence, the district court concluded it had jurisdiction to resentence Lehman and sentenced Lehman to lifetime postrelease supervision. Lehman appealed his new sentence.

On appeal, Lehman argued that "the corrective imposition of an extended supervisory period after he had fully completed his original sentence constitutes the

16

imposition of multiple punishments for the same offense, in violation of double jeopardy, because he had a legitimate expectation that his sentence was final." 308 Kan. at 1094. The *Lehman* court agreed:

"[W]hen Lehman completed his original sentence—even if illegal—without a court order that superseded the judgment of the sentencing judge, he was no longer subject to the jurisdiction of the criminal justice system. Any additional sentence imposed on him for the same offense after completing the original sentence constitutes a multiple punishment proscribed by the double jeopardy provisions of our federal and state constitutions." 308 Kan. at 1099.

Relying almost exclusively on *Lehman*, Clark argues his 2022 resentencing violates double jeopardy. He asserts that, like Lehman, he "had a legitimate expectation that his sentence was final." He claims his 2022 sentence should be vacated, his case reversed, and that "he should be released in accord with the terms of his 2019 sentencing."

Clark's argument is unpersuasive for two reasons. First, unlike Lehman, Clark did not have a legitimate expectation that his sentence was final. The same day the district court resentenced Clark to a lower prison sentence, the State filed a notice of appeal challenging the sentence. When the *Clark II* panel concluded that his 2019 sentence was illegal, Clark sought Kansas Supreme Court review of the *Clark II* decision. After the *Clark III* opinion vacated Clark's 2019 sentence, Clark could not have had an expectation of finality in his sentence until after resentencing. See *State v. Smith*, 65 Kan. App. 2d 19, 29, 556 P.3d 926 (2024).

Second, unlike Lehman, who had completely served his sentence, Clark was serving his sentence when he was resentenced. While his appellate brief asserts that Clark had been released from prison, nothing in the record suggests that Clark had completed his postrelease supervision. And "[p]ostrelease supervision is undeniably a part of the

17

defendant's sentence and is considered punitive." *State v. Nunez*, 319 Kan. 351, 355, 554 P.3d 656 (2024).

The appellant has the burden of designating a record that establishes a claimed error. Without such a record, an appellate court presumes the district court's action was proper. *State v. Valladarez*, 288 Kan. 671, 686, 206 P.3d 879 (2009). Clark has not shown that the 2022 resentencing violated his right against double jeopardy. He is not entitled to relief.

VI.     *Clark Did Not Preserve the District Court's Failure to Address the Mandate Without Delay, So He Is Not Entitled to Relief on This Issue*

At the district court, Clark did not argue that his due process rights were violated by the failure to address the Kansas Supreme Court's mandate without delay. He asserts we should address the issue as necessary to serve the ends of justice or to prevent the denial of fundamental rights. But an appellate court's "'decision to review an unpreserved claim under an exception is a prudential one'"; even if an exception applies, the appellate court is not obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). For an appellate court to address an unpreserved issue, the issue "must be amenable to resolution on appeal . . . . When an insufficient record prevents resolving an unpreserved issue, an appellate court abuses its discretion by invoking an exception." *State v. Unruh*, 320 Kan. 260, 264-65, 565 P.3d 825 (2025).

Because Clark is asserting the district court violated his due process rights by failing to timely impose his new sentence once the mandate issued, resolution of this issue requires factual findings before an unconflicted district court judge. Yet, without raising this issue at the district court level, there is an insufficient record. That is, there are no factual findings made to determine whether a district court during the COVID-19 pandemic erred in resentencing Clark more than a year after the 2021 mandate issued.

18

Without a sufficient record, including factual findings on this issue, we decline to address this issue; to do otherwise would be an abuse of discretion.

VII.    *The District Court Did Not Abuse Its Discretion When It Failed to Make Findings of Fact and Conclusions of Law on Postconviction Discovery Motions*

*Standard of Review*

An abuse of discretion standard generally applies to an appellate court's review of a district court's decision regarding discovery requests. See *State v. Butler*, 315 Kan. 18, 20-21, 503 P.3d 239 (2022). A judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

*Discussion*

Clark argues the district court abused its discretion because "the district court did not make any findings of fact or conclusions of law as to the issues presented in the discovery motions." Clark's argument on this issue fails.

At sentencing, Clark argued that he believed his conviction was a violation of due process and requested "standard discovery" or permission to subpoena law enforcement to "learn more about" "some of these things" to argue both for mitigation of his sentence and "as grounds that might support an argument that Mr. Clark's conviction is wrongful." Clark asserted he had a pending motion to withdraw his plea and also addressed the various discovery motions he had pending.

The district court denied Clark's discovery motions, stating that he had waived many of those rights by plea. When Clark's attorney asked for clarification on whether

19

the district court denied the motion to withdraw a plea and his discovery motions, the district court replied that it had dismissed the motions. Despite Clark's argument otherwise, the district court did conclude that the discovery motions had been waived by Clark's plea. The court did not fail to make findings of fact or conclusions of law. And it did not abuse its discretion by denying the motions for discovery.

VIII. *The District Court Did Not Abuse Its Discretion When It Denied Clark's Motion for a Continuance*

*Standard of Review*

Under K.S.A. 22-3401, a district court may grant a continuance "for good cause shown." A district court's ruling on a motion for continuance is reviewed for an abuse of discretion. *State v. Gentry*, 310 Kan. 715, 734, 449 P.3d 429 (2019). A judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Younger*, 320 Kan. at 137-38.

*Discussion*

Clark asserts his attorney had just entered his appearance, did not have months to prepare for sentencing, and had not previously requested a continuance.

Clark's attorney entered his appearance on August 31, 2022. Sentencing occurred on September 29, 2022. At sentencing, Clark's postconviction attorney described coming to court as "having never seen any discovery at all" as a "pretty irregular thing." Counsel acknowledged he had spoken with Clark but had not seen any police reports or anything except the affidavit of probable cause. Counsel contended he had requested a continuance and filed discovery motions because he was "totally unable to argue any mitigating circumstances about the facts of the case" and because Clark believed the conviction

violated due process. Counsel asserted that a continuance would provide time to "pursue some of these things that I'm hoping to learn more about" in order to "be able to both argue about mitigating circumstances or factors about the facts of the case but also argue some of those same facts as grounds that might support an argument that Mr. Clark's conviction is wrongful." Counsel explained he had received approval to retain experts, both to assist with mitigation and with "issues about the underlying conviction itself," but had not had an opportunity to do so.

The district court denied the motion to continue, stating: "With respect to continuance, I don't find good reason to continue the motions, the hearing for today but we're going to go ahead and what we need to do today."

A review of the discovery motions Clark filed shows the motions were intended primarily to challenge Clark's conviction and his plea. And Clark's 2022 motion for departure renewed his previously filed departure motion, supplementing it with additional information. Even then, however, Clark asserted his conviction was "potential[ly] wrongful" despite pleading guilty to the crime.

The district court's denial of Clark's continuance was not arbitrary, fanciful, or unreasonable, nor was it based on an error of fact or law. The district court did not abuse its discretion when it denied Clark's motion for continuance.

IX.   *The District Court Did Not Deny Clark's Motion for a Departure Based on Its Perceived Lack of Jurisdiction*

*Standard of Review*

Appellate courts review the grant or denial of a departure sentence for an abuse of discretion. That said, whether an appellate court has jurisdiction to review the denial of a

21

departure motion is a question of law reviewed de novo. *State v. Farmer*, 312 Kan. 761, 763, 480 P.3d 155 (2021).

*Discussion*

On appeal, Clark argues the district court denied his motion for a departure because the court believed it lacked jurisdiction to depart. But the district court heard lengthy arguments from both Clark and the State on the departure motion. And during his allocution immediately before the court pronounced the sentence, Clark argued that his 2019 sentence was the law of the case because the State never petitioned for review. He claimed that the Kansas Supreme Court erred when it compared his out-of-state felony to a Kansas misdemeanor. And he asserted that the district court would be creating an illegal sentence by resentencing him again.

With this context, it becomes clear that the district court did not deny the departure motion based on a mistaken lack of jurisdiction. Instead, the district court heard arguments on the motion. It later advised Clark that it believed resentencing was required by the mandate of the Kansas Supreme Court. And, at the same time, the district court denied the departure motion based on the aggravated nature of the crime. No party argued the district court lacked jurisdiction to consider Clark's departure motion. Moreover, our review of the record does not indicate or even suggest that the district court thought it lacked jurisdiction to consider the motion. The district court's denial of Clark's departure motion was not an error of law. Thus, there was no abuse of discretion in the court's denial of Clark's departure motion.

X.    *The District Court Did Not Err When It Denied Clark's Motion to Withdraw His Plea*

*Standard of Review*

When a district court summarily denies a motion to withdraw a plea without argument and additional evidence, "'this court exercises de novo review because it has the same access to the motion, records, and files as the district court.'" *State v. Wilson*, 308 Kan. 516, 520, 421 P.3d 742 (2018).

*Discussion*

K.S.A. 22-3210(d) governs the withdrawal of a plea. It sets forth two standards depending on the timing of the plea. Under K.S.A. 22-3210(d)(1), a plea may be set aside for "good cause" any time before the sentence is imposed. Under K.S.A. 22-3210(d)(2), "the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea" to correct a manifest injustice. Relevant here, absent excusable neglect, a motion to withdraw a plea after sentencing must be brought within one year of "[t]he final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction." K.S.A. 22-3210(e).

The parties disagree on whether the appropriate standard is "good cause" or "manifest injustice." Clark argues that his motion to withdraw a plea is necessarily timely because it was filed before his 2022 resentencing. See *State v. DeAnda*, 307 Kan. 500, 501-03, 411 P.3d 330 (2018) (treating motion to withdraw plea as presentence motion when filed after sentence vacated on appeal). Thus, his brief focuses on whether there was good cause to allow him to withdraw his plea.

23

In contrast, the State contends that this is Clark's second attempt to withdraw his plea. Previously, a district court denied Clark's motion to withdraw his plea after holding an evidentiary hearing that included testimony by Clark and his trial counsel. The State also argues that Clark has failed to meet the statutory requirements to timely move to withdraw his plea under K.S.A. 22-3210(e)(1). As the State notes, Clark was sentenced in 2005, and his 2022 motion to withdraw his plea is more than 12 years out of time because the time limitation was enacted on April 16, 2009. See K.S.A. 2009 Supp. 22-3210(e)(1). As a result, the State focuses on whether Clark has both shown manifest injustice for granting the motion and made an affirmative showing of excusable neglect for why the motion is untimely.

It is, however, unnecessary to determine which standard appropriately governs the facts here. Even applying the favorable good cause standard, Clark cannot meet his burden. Our courts consider three factors when determining whether a defendant has demonstrated good cause to withdraw his or her plea: "whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors establish "'viable benchmarks' for the district court when exercising its discretion" and "should not be applied mechanically and to the exclusion of other factors" that might exist in a particular case. *State v. Bilbrey*, 317 Kan. 57, 62-63, 523 P.3d 1078 (2023).

Clark filed his initial motion to withdraw his plea in April 2005. He alleged that he had been coerced into the plea and his attorney told him he had "no hope" in challenging the charges. Clark believed "the chances of a successful downward departure were greater than what was later communicated to defendant by letter from his attorney." He alleged that he only met with his attorney twice before entering the plea.

24

On September 1, 2022, Clark again moved to withdraw his plea. The motion asserted that Clark was innocent and wrongfully convicted. The motion also explained that Clark, "at a hearing on this motion, will enumerate the reasons believed to merit withdrawal of the plea after sentencing, and reinstatement of the proceedings on the jury trial docket." Attached to Clark's motion were the transcript of the 2005 plea hearing, Clark's 2005 motion to withdraw his plea, and a transcript of his 2005 sentencing.

At sentencing, Clark argued for a continuance, in part because he wanted to receive discovery to "support an argument that Mr. Clark's conviction is wrongful." Clark told the court that "Mr. Clark has litigated that issue before. He would like to renew his challenge and litigate that again . . . ."

Clark did not identify any facts that suggested the *Edgar* factors supported withdrawal of his plea for either good cause or to prevent a manifest injustice. Clark's motion asserted, without support, that he was innocent and was wrongly convicted. And Clark did not expand on his assertions at sentencing, merely asking the district court for a continuance because he "hop[ed]" to discover facts "that might support an argument" to withdraw his plea. Clark's motion contained only conclusory allegations, and he provided no additional support at the sentencing hearing. Clark is not entitled to relief. See *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014) ("'[M]ere conclusions . . . are not sufficient to raise a substantial issue of fact when no factual basis is alleged or appears from the record.'").

The district court did not err in summarily denying Clark's motion to withdraw his plea.

XI.   *The District Court Erred When It "Reimposed" Bids Fees Because Those Fees Were Not Vacated*

Clark argues the district court erred when it ordered him to pay BIDS attorney fees because it did not consider his financial resources and the burden imposed by the fees before imposing them. The State argues Clark abandoned this issue when he failed to raise it in his two previous appeals.

As discussed above, Clark's appeal is not a direct appeal. See *Jacobson*, 319 Kan. at 77. Instead, this appeal is a continuation of the proceedings initiated by Clark's 2017 motion to correct an illegal sentence. On a remand for resentencing following a motion to correct an illegal sentence, the district court "may only resentence the illegal sentence(s)." *State v. Jamerson*, 309 Kan. 211, 217, 433 P.3d 698 (2019). BIDS attorney fees, however, are not punishment and are not part of the sentence imposed. As a result, BIDS fees cannot be corrected under a motion to correct an illegal sentence. See *State v. Phillips*, 289 Kan. 28, 36, 210 P.3d 93 (2009).

The district court erred when it reimposed the same BIDS attorney fees and application fee as ordered in Clark's original sentence. The district court did not err by failing to consider Clark's financial resources; it erred by "reimposing" Clark's BIDS attorney fees and application fee because those fees were never vacated. Indeed, at Clark's August 2019 resentencing, the district court did not address the BIDS attorney fees or application fee. Despite this, the journal entry of resentencing included both BIDS attorney fees and the application fee. Those fees remain from Clark's original 2005 sentencing.

Affirmed.